## JOSEPH HASTINGS & *al. vs.* BANGOR HOUSE PROPRIETORS.

Where goods are purchased by one assuming without authority to be the agent of another, if the latter knowingly receives the goods so purchased as his own property, this will amount to a ratification of the agency.

But if he denies the authority of the pretended agent to act for him, on having knowledge of his acts, and afterwards, in pursuance of a prior engagement to receive goods of that description, does receive them as the property of the assumed agent, in payment of a debt due from him, it will not amount to a ratification.

Although it may be regarded as unfair, or perhaps fraudulent, voluntarily to purchase of such assumed agent goods thus obtained, still the remedy would not be by an action against the last purchaser, as the original purchaser of the goods.

If an instruction be given to the jury which leaves them to draw an incorrect inference from facts, material to the issue, the verdict will be set aside.

ASSUMPSIT on an account annexed to the writ, to recover the value of articles of furniture.

The plaintiffs introduced evidence tending to show, that they sold the goods charged in the account to the defendants, and delivered the same to the order of *Martin S. Wood,* as their agent; that *Wood* was their agent; that the property was put into the *Bangor House;* that a portion of it remained there at the time of the trial, having been leased to the tenant of the house by the proprietors; that the defendants were informed by the plaintiffs, that they had made the sale of the goods to *Wood* as their agent, and that the same were charged to the defendants; and that *Wood* was authorized by the defendants as their agent to purchase of the plaintiffs a part of the articles charged to them in the account. There was much conflicting and opposing testimony upon all these points. It was said at the argument of the questions of law, that the true case was not fully presented in the report.

Upon the evidence the plaintiffs claimed to recover, upon the ground — 1. That *Wood* was the agent of the defendants, and that his contract, made with the plaintiffs was binding on the defendants. 2. That *Wood* was held out by the defendants as their agent, and that his contract was binding upon them. 3. That the defendants having received, claimed and used the property sold by

the plaintiffs to *Wood* as their agent, with a knowledge that the same was so sold to *Wood* and charged to the defendants, was a ratification of his agency, and that claiming and appropriating the same with a knowledge of the manner in which it had been obtained, bound the defendants to pay therefor.

The counsel for the defendants requested the Court to instruct the jury, that if the crockery and glass ware, included in the schedule of the articles, was delivered over to the *Bangor House Proprietors* in part payment of *Wood's* note, and was received by them under the lease, that such reception was not a ratification of the purchase of *Wood* of such crockery and glass ware.

EMERY, J. who presided at the trial, instructed the jury, that the mere fact that the *Bangor House Proprietary* received the goods and chattels in question from *Martin S. Wood* in part payment of his note to them, by direction of the referees in the reference between them, would not be sufficient of itself to charge the defendants, had they been ignorant of the purchase thereof of the plaintiffs by *Wood*, claiming to act as the agent of the defendants.

That the jury would consider all the matters previously in evidence as to former acts of *Wood*, as the defendants' agent in selecting crockery ware from the plaintiffs' store by direction of Mr. *Dwinal*, the defendants' agent, *Wood's* application to *Dwinal* and *Emerson* for permission to purchase silver ware, and the evidence of *Dwinal* and *Emerson*, denying that they gave *Wood* authority to purchase silver ware in the name of the defendants of the plaintiffs, or to buy crockery of any body in the defendants' name, after *Wood* had become the occupant of the house.

But if, from the evidence in the case, the jury believed that previous to the reception of said goods from said *Wood*, the same goods were purchased of the plaintiffs by said *Wood*, claiming to be the defendants' agent, and were by the plaintiffs delivered to *Wood* and charged to the defendants, and notice was given by the plaintiffs to the defendants, of these facts, the reception and use of those goods by the defendants afterwards for their benefit, would amount to a ratification of *Wood's* acts, so far as to make the defendants liable to the plaintiffs for the value of the goods for which the action is prosecuted.

If these instructions were correct, the verdict for the plaintiffs

under them was to stand; but if erroneous, the verdict was to be set aside, and a new trial granted.

*Preble* argued for the defendants, contending that the instruction to the jury, requested in behalf of the defendants, was improperly withheld; and that the instructions given were erroneous.

*Rogers* argued for the plaintiffs, citing 7 *Cranch*, 299; 19 *John. R.* 60; 4 *Cowen*, 659; 2 *Gill & Johns.* 227; 2 *Conn. R.* 255; 1 *Pick.* 373; 8 *Pick.* 178; 3 *Har. & J.* 367; 3 *Halst.* 182.

The opinion of the Court was drawn up by

SHEPLEY J. — The lease from the defendants to *Wood* is referred to as part of the case. And it appears, that the lessee, among other things, was to purchase "all the glass, crockery, silver, and plated ware," and to give his note therefor; and on the determination of the lease, the lessors were obliged to repurchase the same, or what might remain of them, at a fair value. The lessee was to replace all things broken, lost, or injured; and the articles, which they were obliged to repurchase would not therefore necessarily be the same articles, which they sold. The lessee, after he had executed the lease and taken possession of the house, purchased of the plaintiffs articles of the description before mentioned and represented himself as purchasing for the defendants. These he received and may have placed them among other articles of like character already in the house. A difference having arisen between the parties to the lease, their rights and claims appear to have been adjusted by reference; and the furniture in the house to have been restored to the possession of the defendants. And they might thus have become possessed of the articles purchased of the plaintiffs. Before this took place, they had knowledge of the plaintiffs' claim, and had denied the authority of *Wood* to purchase on their account. The plaintiffs contended, that the defendants had received and appropriated to their own use the articles purchased of them. But their counsel contend, that there was no evidence in the case, that they were received from the lessee in payment of his note by a repurchase provided for in the lease. And that there was not therefore any testimony authorizing the counsel for the defendants to call upon the presiding Judge to instruct the jury as he was re-

quested to do. If the report does leave this doubtful, yet it appears, that the Judge proceeded to instruct the jury upon the legal effect of such a state of facts. And whether those instructions were correct, is a question reserved and presented in the report; and the defendants are entitled to have a decision upon it.

It does not appear from the lease, that the lessee was deprived of the right to purchase and use in the house other articles similar to those procured by the defendants. When they came to the knowledge, that he had made these purchases claiming to be their agent, they could do no more, while the lease operated, than deny such agency. If on the determination of the lease they knowingly received the goods so purchased as their own property, that would amount to a ratification of the agency. A purchase of them from *Wood* would be an admission of his title to them and a practical denial of their having obtained a title by the original purchase through their agent. It might be regarded as unfair, or perhaps fraudulent voluntarily to make a purchase of him knowing, that the plaintiffs had been deceived, when they parted with the goods. And this may perhaps have occasioned the instructions, which were given to the jury. The remedy however in such a case would not be by a suit against the defendants as the original purchasers of the goods. But if the defendants purchased them because they conceived, that they were obliged to do so by the stipulations in the lease, and thus received them in payment of a note due to them, they could not be justly charged with dealing unfairly. Whether they came to the possession of the defendants in this manner, or whether they received them as a part of their own furniture was one of the questions apparently presented to the consideration of the jury. The instructions on this point do not distinctly state, but leave the jury to infer, that the defendants knowing in what manner *Wood* came by the goods could not receive them of him by the decision of a tribunal selected by the parties in payment of *Wood's* note without a ratification of the original purchase. A purchase from *Wood* assumes, that he and not they became the owner by the original purchase, and tends, as before stated, rather to deny than to admit, that he purchased for them. If the schedule referred to in the requested instruction was not received in evidence, the defendants were not entitled to have

the requested instruction given.   If that paper was not in the case the instructions which were  given,  left the  jury to draw an  incorrect inference from such other facts as might shew, that the defendants received the goods by purchase under the lease.

*Verdict set aside and a new trial  granted.*