White, J.
There is no controversy as to the general rule by which the question of the liability of the railroad company for the act complained of in the petition, is to be determined. The difficulty arises in the application of the rule to the peculiar facts of the case. Halpine, the person guilty of the wrong, as the servant of the company, was charged with the duty of-checking the baggage of passengers; and whatever liability, if any, devolved upon the company for the consequences of his wrongful acts, grew out of the relation of master and servant which existed between him and the company.
The general» rule as to the liability of the master for the wrongful acts of his servant, is thus stated by Mr. Smith in his work on Master and Servant: “ A master is ordinarily liable to answer in a civil suit, for the tortious or wrongful acts of his servant, if those acts are done in the course of his employment in his master’s service. The maxims applicable to such cases being respondeat superior, and that before alluded to, qui faeitper alium faeit per se. This rule, with some few exceptions, which will hereafter be pointed out, is of universal application; whether the act of the servant be one of omission or commission, whether negligent, fraudulent, or deceitful, or even if it be an act of positive malfeas-. anee or misconduct, if it be done in the course of Ms employment, his master is responsible for it ewiliter to third persons.” Smith’s M. & S. s. p. 151.
But, to make the master responsible, the act of the servant must be done in the course of his employment, that is, under the express or implied authority of the master. Beyond the scope of his employment, the servant is as much a stranger to his master as any third person, and the act of the servant-not done in the execution of the service for which he was engaged cannot be regarded as the act of the master. Id. s. p. 160; Shear. & Redf. on Neg., §§ 59, 62; Limpus v. London Genl. Omnibus Co., 1 Hurl. & Colt. 541; Poulton v. London & Southwestern R. R. Co., L. R. 2 Q. B. 535.
*132 That there was in this ease no express authority given to the servant, is conceded. Can such authority be implied under the circumstances of the case from the nature of the business intrusted to his charge? The company contends that it cannot; and the tenth instruction was asked on the grounds that there was no evidence tending to show such authority. For the plaintiff below, it is insisted that the servant was impliedly invested with such powers as were essential to the regular and certain performance of his duties; that for the dispatch of his business, in certain emergencies, he must be considered as authorized to suppress by force, if necessary, any interference with, or obstruction of, the quick and certain discharge of his duties.
Without undertaking to lay down a general rule to govern all cases, it may safely be admitted that the servant is invested with authority to use the' neeessary means to the performance of the duties assigned him; and that the character of the ■means that may be used will vary according to the nature of the duty to be performed and the attending circumstances.
But, in looking at the evidence, it is to be noticed that the assault complained of was not committed in endeavoring to eject the plaintiff from the space enclosed by the tables, over which the servant may be supposed to have had a special control.: The plaintiff, according to his own statement, had gone outside of the tables, and was shaking his finger in Halpine’s face, and addressing him with an opprobrious epithet.
It seems to us the assault was in no way calculated to facilitate or promote the business for which the servant was employed by the .master; nor could it have been supposed to be, or intended, as, an act done with that view or object. It is not a case of excess of force and violence in executing the authority of the master, but rather an act beyond such authority and foreign to the objects of the employment. There was no evidence tending to show that Halpine had any charge of the portions of depot not allotted for the purpose of checking baggage; neither did his employment imply any authority or control over the persons of passengers or others *133 who might be found there. Nor is this the case of an act done from a wrong judgment in regard to a matter committed by the master to the discretion of the servant.
Another ground assumed is, that the assault was an act of the servant done in part execution of the contract of carriage betweeu the plaintiff and the company.
This is merely presenting the question in a different form, the principle being the same as that already referred to, namely: whether the act was done in the execution or performance of the service for which the servant was engaged. Whether the service to be rendered by the master is in the performance of a contract, or in the discharge of any other duty resting on him, can, it is conceived, make no difference the question being, in either case, whether the act is' within the scope .of the servant’s express or implied authority in respect to the master’s service.
In order to withdraw this case from the operation of the general rule, and hold the company responsible on the ground of its contract with the plaintiff as a passenger, it is necessary to maintain that the company, in requiring the plaintiff to apply to its servant for the purpose and as the only means of getting his baggage checked, impliedly undertook to vouch for and warrant the good conduct of the servant towards the plaintiff while the two were engaged in transacting the business. Whether this position is tenable, we do not find it necessary in the decision of the case now before us to express a definitive opinion. The case was not tried on this theory in the court below, nor has this phase of the question been argued here.
Rut if any such rule of liability could be applied against the company, it would necessarily impose the reciprocal duty upon the plaintiff to so demean himself towards the servant as not, by misbehavior, to provoke a personal quarrel between them.
The evidence of the company on the trial tended strongly to prove that the plaintiff, by his importunate conduct and abusive language towards the servant, provoked a personal quarrel between them; that the assault was the result of this *134 quarrel, and that the blow was inflicted by the servant as an act of personal resentment. If these facts had been found by the jury, the wrongful act of the servant in striking the plaintiff could not be regarded as authorized by the master, nor as an act done by the servant in the execution of the service for which he was engaged by the master. The fact that the blow was inflicted with a hatchet furnished by the master to be used for a wholly different purpose, though in connection with the servant’s business, was wholly immaterial as respects the liability of the master. If he would not otherwise have been liable for the assault, the fact that it was committed with his hatchet did not contribute to make him so.
The existence of the quarrel and its bearing upon the character of the assault was not noticed in the charge. And if the jury found the quarrel to have been of the character which we have stated the evidence tended to show it, they were not advised as to the influence it might properly have in enabling them to determine whether the assault was an act done in the course of the servant’s employment, or was merely his own personal act.
It is true, the charge stated the general rule correctly. But the difficulty encountered by the jury, as shown by the nature of the case and by the questions they propounded to the court, was to ascertain how to apply the general rule to the peculiar facts of the case in making up their verdict.
The reference made in the charge to the use for which the hatchet was provided, was calculated, we think, to make an erroneous impression on the jury on the very point on which their verdict hinged. And, furthermore, the charge, from the generality of its terms, failed to give the jury the assistance they ought to have received in view of the facts of the case.
A charge though not strictly objectionable in point of law, but which leaves the jury to draw an incorrect inference from facts in the case material to the issue, will constitute good ground for a new trial, where it is reasonable to suppose, from a consideration of the whole evidence, that a dif *135 ferent verdict would have been rendered if the jury had been fully instructed. The charge ought not only to be correct, but to be so adapted to the case and so explicit as not to be misconstrued or misunderstood by the jury, in the application of the law to the facts as they may find them from the evidence. Grah. & Water. on New Trials, 774; 18 Maine Rep. 436; 30 Conn. Rep. 343.
Judgment reversed, and cause remanded for a new trial.
Brinkerhoff, C.J., and Scott, Welch, and Day, JJ., concurred.