BURROUGHS & SPRINGS *vs.* THE NORTH CAROLINA RAIL-
ROAD COMPANY.

A sale of shares of stock in a Railroad Company carries with it the dividends declared by the Company, when they are to be paid at a day subsequent to the transfer of the stock;

Therefore, where the North Carolina Railroad Company declared a dividend on the stock in said Company, on the 16th day of February, 1870, to be paid on the first days of April and July thereafter, and the owner of certain shares of such stock sold and transferred the same on the 17th day of February; *Held,* that the purchaser of said shares of stock acquired the dividends, as well as the stock.

This was a civil action, tried before *Henry, J.,* at a Special Term of Mecklenburg Superior Court.

The following case agreed was presented to his Honor:

The plaintiffs, on the 16th day of February, 1870, were the owners of thirty-four shares of stock in the North Carolina Railroad Company, upon which a dividend of six per centum was declared on the said 16th of February, 1870, three per centum payable on April 1st, 1870, and three per centum on

1st July, 1870. The plaintiffs sold and transferred said stock on the 17th February, 1870, to S. H. Wiley. The plaintiffs made due demand for payment of the dividends, before the date fixed for the payment. The payment was refused. The dividend was paid to S. H. Wiley, the assignee. The certificate of stock, issued to plaintiffs, was cancelled, and a new one issued to Wiley on the 21st February, 1870.

The following resolution is also made a part of the case agreed :

"The Board of Directors of the North Carolina Railroad Company do declare an annual dividend of six per cent. on the capital stock of this Company, for the fiscal year ending May 31st, 1870. Three per cent. to be paid on 1st April, and three per cent on the 1st July, 1870, and the transfer books be closed from 1st day of March to 1st April, and from 1st June to 1st day of July."

The Court was of opinion that the plaintiffs were entitled to recover. Judgment accordingly. From which judgment defendant appealed.

*Jones & Johnston,* for the plaintiffs.
*J. H. Wilson,* for the defendant.

RODMAN, J. On 16th February, 1870, the North Carolina Railroad Company declared a dividend by the following resolution : "The Board of Directors of the North Carolina Railroad Company do declare an annual dividend of six per cent. on the capital stock of this company, for the fiscal year ending the 31st of May, 1870. Three per cent. to be paid on 1st April, and three per cent. payable on the first day of July, 1870, and the transfer books be closed from first day of March to the first of April, and from the first day of June until the first day of July."

On the 17th February, the plaintiffs, in writing in the usual form, at the foot of their certificate for thirty-four shares of

stock in the company, transferred the same to Samuel H. Wiley for value, and authorized F. A. Stagg, attorney, to transfer the same on the books of the company. The transfer was accordingly made on the 21st February. The certificate of stock to the plaintiffs was cancelled, and a new certificate issued to Wiley. On the same day plaintiffs notified the company that they claimed the dividend declared on 16th February. The company, nevertheless, paid the same to Wiley, and this action is brought to recover it. One would suppose, that in a case which must be of frequent occurrence, there would be proved some established usage, or that some decided cases could be found fixing the rights of the parties. If there be any established usage, either general or special to this corporation, there has been no evidence of it offered in this case. And the learned counsel inform us that they have been able to find no authority whatever on it. The absence of authority is the more remarkable, as the rule as to a dividend following the stock or not, under the present circumstances, would seem to be of a general nature, not confined to sales, but covering the case of a life tenant with remainder, when the life tenant dies after the dividend is declared, and before it is payable, and the case of a will bequeathing stock when the testator dies under the like circumstances.

Before proceeding to the particular consideration of this case, it is necessary to observe:

1. It was clearly within the power of the seller and purchaser of the stock in this case, to have contracted with respect to the dividend declared on the day before. But,

2. If we assume for the moment, that the effect of the resolution, declaring the dividend, was to make it payable to whoever should appear by the books of the company to be the owner of the stock on the days on which it was payable, then, notwithstanding any different contract between the plaintiffs and their vendee, the company was justified in paying to the

vendee, and the redress of the plaintiffs would be by an action against their vendee for money had and received.

It is important to notice that the question is, not as to the contract between plaintiffs and Wiley, but, to whom did the company agree to pay the dividend; for if the company agreed to pay to one who turned out to be Wiley, its liability cannot be affected by any collateral agreement between the plaintiffs and Wiley (even if there were express proofs of such) without its consent. Without adverting to the principle, that the contract between plaintiffs and Wiley must be supposed to have been made in reference to the resolution of the day before, as to which it does not appear that either party had any advantage in point of knowledge; yet, in the absence of a contrary agreement, the sale must necessarily have been of the subject matter with its rights and incidents at the date, or perhaps when the transfer should be completed.

So that the true question is, what was the effect and meaning of the resolution? Did it mean that the dividend should be payable to those who held the stock on 15th February, or to those who should hold it on 1st April? If the resolution had been clear and explicit in either sense, I conceive there could be no room for a controversy. Being of uncertain meaning, the Courts have to give it a certain one. But whatever shall be determined to be its meaning in law, that must be taken to be as plainly its meaning as if it had been expressly written so.

Now as to the meaning and effect of the resolution: In the absence of a plain reason and of direct authority, a lawyer has but one resource. He must refer to analogous cases, and endeavor to extract from them a principle broad enough to cover the case in hand. And he will be more or less successful, according to the number and closeness of the analogies he is able to adduce.

As to the analogies: It is a familiar maxim, that the incident passes with its principal.

:: a bond not negotiable, and bearing interest, whether that interest be made payable with the principal at a certain time, or be made payable annually or at other certain times before the principal, be assigned, the assignee is entitled to receive, as an incident, all interest not paid before the assignment, whether the day for its payment has arrived or not. Of course this doctrine will not apply to bonds with interest coupons detachable.

The analogy is not close in this, because, if a payment of interest had become due and payable on the 16th February, and the bond was assigned on the 17th February, the assignment of the bond would have carried the interest previously payable; which, if the analogy were strictly followed, would lead us to hold that if the assignment of stock had been after 1st April, it would have carried the dividend payable on that day, if not paid before the assignment, a conclusion not necessary in this case, and as to which we express no opinion. If one assigns a bond or promissory note, secured by mortgage or other collateral, the benefit of the collateral passes as an incident.

I take it to be clear also, that if a registered Government bond be assigned on the books of the treasury, any annual or semi-annual payment of interest, which becomes due and *payable* the next day, would be paid to the then holder. *Anson* v. *Towgood*, 1 Jac. & Walker 637. In such case the dividend would, in substance, have been declared before the assignment, viz: at the making of the bond, but payable afterwards. If a reversioner sell land, the purchaser becomes entitled to the rent which becomes payable the next day. So if tenant for life dies, the remainderman becomes entitled. So with fines and heriots. These analogies, and some others, are found stated in the argument of Sir Samuel Romilly, in *Paris* v. *Paris*, 10 Ves. 186. These are all the analogies which occur to me, that are indisputable; for if an analogy be disputable it has no

value. They would not be conclusive if any could be brought on the other side. But the general principle is clear, that the incident follows the principal. What reason exists for making this an exception? The burden of the argument is put on the plaintiffs.

*What arguments can be drawn from the terms of the resolution ?*

What was the object in declaring the transfer books of the company closed from 1st March to 1st April?

If the dividend was intended to be payable to any one who was the holder on 16th February, there could be no use in closing the books. In any case, upon a demand for payment, it would only be necessary to see from the books, who was the holder on that day. But if the usage be, to put the dividend on the books of the company to the credit of the holders on 1st March, we can see a reason for closing the books, viz: to give time for the company to make out its accounts with its stockholders on that day. Suppose an assignment of stock between 1st March and 1st April, would the company be bound to notice it, in reference to a dividend payable 1st April? I think not. .

The same rule, which applies to the dividend payable 1st April, applies to that payable 1st July. If the first did not pass by the assignment, the second did not.

But the learned counsel were mistaken in supposing the question entirely barren of authority. In such cases we are generally willing to confide in the diligence of counsel, and do not feel ourselves bound to assiduous research. I have found one decided case however, which, if correctly cited, is in point and decisive of this case. I cite it from *Lindley on Partnership*, 896, as follows: " The specific legatee (of stock) is entitled to all dividends which *become payable* after the death of the testator ; *Jacques* v. *Chambers*, 2 Coll. 435 ; *Wright* v. *Warren*, 4 Deg. & S. 367 ; *even though the resolution authorizing their payment may have been* passed in his lifetime ;

*Clive* v. *Clive*, Kay. 600." Unfortunately the last case cited is not accessible to us.

Besides the above, the cases in 10 Ves. 185, 290, 13 Ves. 363, and 14 Ves. 70, and also the American cases, *Phelps* v. *Farmers' Bank*, 26 Connecticut 272, *Minot* v. *Paine*, 99 Mass. 106, *Goodwin* v. *Hardy*, 57 Maine 143, may be referred to. These all relate to the right of a tenant for life to dividends, both declared and payable in his lifetime. So, none of them are in point to the present question. But in the discussions it seems to be generally assumed that the ownership of the stock, when the dividend became payable, fixed the right to it. As in the case of rent, it is only when it becomes payable, that the dividend becomes "fruit fallen," and detached from the principal estate, so as not to pass with it.

Judgment reversed, and judgment for defendant in this Court.

Per Curiam.                  Judgment reversed.