## WHEELER *v.* NORTHWESTERN SLEIGH CO.

*(Circuit Court, E. D. Wisconsin.* August 5, 1889.)

**1. CORPORATIONS—STOCK—SALE—RIGHT TO DIVIDENDS.**

When a corporation declares a dividend, the earnings represented by the dividend are no longer represented by the stock, but become a debt due to the owner of the stock at the time of the declaration, and this right of the stockholder does not pass by a transfer of the stock, in the absence of a special agreement. That the dividend is payable at a future date does not affect the stockholder's right.

**2. PRINCIPAL AND AGENT—AUTHORITY—LIABILITY OF PRINCIPAL TO THIRD PERSONS.**

An owner of stock on which a dividend had been declared, but not paid, authorized an agent to sell the stock, expressly reserving the right to the dividend. The agent agreed with the purchaser that the dividend should go with the stock. *Held,* that the purchaser had no right to assume that the agent, because possessor of the stock, was authorized to sell the dividend, which formed no part of and did not pass as an incident to it, and as to that dealt with the agent at his peril, and that the principal was not bound by the representations.

**3. SAME—RATIFICATION.**

The owner received from the agent the exact amount for which he had authorized the stock to be sold, without any knowledge of the agent's representations and agreements. or that the purchaser claimed to have purchased the dividend. No transfer was made or demanded of the dividend. The owner was first informed by the treasurer of the company of the purchaser's claim, but the ground of the claim was not disclosed, and the purchaser asserted none to the owner. Upon the maturity of the dividend the owner brought suit against the company, and upon the trial he was informed for the first time of the facts upon which the purchaser based his claim. *Held,* that the retention of the proceeds of the sale did not amount to a ratification of the agent's unauthorized acts.

At Law. On motion for judgment.

*W. J. Turner,* for plaintiff.

*J. V. & Chas. Quarles* and *J. G. Flanders,* for defendant.

Before GRESHAM and JENKINS, JJ.

JENKINS, J. At the trial a special verdict was taken, upon which both parties moved the court for judgment. The plaintiff sues to recover a certain dividend declared by the defendant upon stock in its company at the time owned by the plaintiff. This dividend was declared on the 1st day of March, 1886, and was payable by the terms of the resolution on May 1st and July 1st next thereafter. The defense is that after the declaring of the dividend, and before it was payable, the plaintiff sold the dividend to Chapman & Goss, to whom it was paid by the defendant.

The facts established by the evidence and the special verdict are these: Soon after the dividend was declared, the plaintiff authorized one H. S. Benjamin to sell his stock at par, but did not empower him to dispose of the dividend declared. To the contrary, in his instruction the dividend was expressly reserved. The plaintiff retained possession of the stock. Benjamin, on March 12th, contracted with Chapman & Goss, then and previously stockholders in the company, and connected

with its management, to sell them the plaintiff's stock at its par value, representing that the dividend declared would, and agreeing that it should, go with the stock. From the amount of stock offered them, Chapman & Goss supposed that it was the stock once owned by the plaintiff, but were told by Benjamin, and believed, that the stock was then owned by Benjamin's wife. They were not informed of the plaintiff's instructions to Benjamin, and did not know that Benjamin was the agent of the plaintiff. At the time of the contract of sale, Benjamin did not, as Chapman & Goss knew, have possession of the stock, and did not receive it from the plaintiff until March 15th, the date of its transfer to the purchasers. It was sent to the agent by the plaintiff pursuant to advice that he had sold it at par. Benjamin delivered the stock to Chapman & Goss, who paid therefor the par value upon the faith of Benjamin's representation that the dividend would, and his agreement that it should, go with the stock. There was no formal assignment or transfer of dividend. The plaintiff received from Benjamin the avails of the stock in ignorance of Benjamin's representation and agreement, and still retains the same. The defendant, after demand by the plaintiff, paid the dividend to Chapman & Goss upon receiving indemnity. It does not appear when, if at all, the plaintiff had information of the representation and agreement of Benjamin. So far as the record discloses, no communication upon the subject at any time passed between the purchasers of the stock and the plaintiff. The latter had notice about May 1st, when he applied for payment, that Chapman & Goss claimed the dividend, but was not advised of the nature of their claim. At the trial Benjamin denied the representation and agreement alleged, insisting that he merely expressed to Chapman & Goss an opinion upon the question whether, as matter of law, the dividend would follow the stock. His contention in that respect is settled adversely to him by the special verdict. Chapman & Goss have never tendered to the plaintiff the stock, or demanded return of the money paid, nor has the plaintiff tendered back the money, or demanded the stock.

It is insisted for the defendant (1) that, as matter of law, the dividend passed with the stock; (2) if otherwise, that the plaintiff is bound by the representation and agreement of his agent; (3) that the plaintiff, by retention of the avails of the bargain, has ratified the contract made by his agent.

1. Stockholders are, as to the property of the corporation, *quasi* partners, holding *per my et per tout.* The earnings of the corporation are part of the corporate property, held by the same tenure, and, until separated from the general mass, the interest of the stockholder therein passes with a transfer of the stock; and this, irrespective of the time during which earnings have accrued. By the declaration of a dividend, however, the earnings, to the extent declared, are separated from the general mass of property, and appropriated to the then stockholders, who become creditors of the corporation for the amount of the dividend. The relationship of the stockholder to the corporation, as to the amount of the dividend, is thus changed from one of partnership ownership to that of cred-

itor. He thereafter stands to the corporation in a dual relation,—with respect to his stock, as partner and part owner of the corporate property; with respect to the dividend, as creditor upon a par with other creditors of the corporation. The severance of the earnings from the general mass of corporate property, and the promise to pay, arising from the declaration of the dividend, works this change. The earnings represented by the dividend, although the fruit of the general property of the company, are no longer represented by the stock, but become a debt of the company to the individual who at the time of the declaration of dividend was the owner of the stock. That the dividend is payable at a future date can work no distinction in the right. The debt exists from the time of the declaration of dividend, although payment is postponed for the convenience of the company. The right became fixed and absolute by the declaration. This right could, of course, be transferred with the stock by special agreement, but not otherwise. The dividend would not pass as an incident of the stock. *Brundage* v. *Brundage*, 60 N. Y. 544; *Hill* v. *Newichawanick Co.*, 8 Hun, 459, affirmed 71 N. Y. 593; *Boardman* v. *Railway Co.*, 84 N. Y. 178. So a legatee of shares is not entitled to a dividend thereon declared before, but payable after, the death of the testator. The dividend forms part of the *corpus* of the estate, and passes to the executor. *De Gendre* v. *Kent*, L. R. 4 Eq. 283. The dividends are earnings growing out of the stock, but when declared are immediately separated from it, and exist independently of it. They are happily likened in the case last cited to fallen fruit, which does not pass with the sale or gift of the tree. The cases of *Clive* v. *Clive*, Kay, 600, and *Burroughs* v. *Railroad Co.*, 67 N. C. 376, relied upon by the defendant, are not availing. The former case was ruled upon the peculiar terms of the corporate articles of the company, providing that the shareholder should not receive any dividends after the period at which he ceased to be proprietor of the shares, but that dividends on such shares should continue in suspense until some other person should become proprietor of them. In the latter case, the resolution declaring a dividend payable on two future dates provided that the transfer books should be closed for 30 days prior to each such date. The court lay stress upon the language of the resolution, and construe it as an express declaration that the dividend was payable, not to present shareholders, but to those who should be shareholders upon the books at the maturity of the dividend, since otherwise the closing of the books would be a useless ceremony. In this view the decision may be upheld, although much of the argument of the opinion is opposed to the current of authority.

2. It is, of course, correct to say that if a principal puts his agent in a position to impose upon an innocent third person, by apparently pursuing his authority, he shall be bound by his acts. It is, however, equally true that one dealing with an agent must look to the extent and scope of his agency, and that an implied or ostensible agency is never construed to extend beyond the obvious purpose for which it is apparently created. Here the plaintiff had authorized his agent to sell his shares in the defendant company. He was bound by all such acts of

his agent as were within the apparent authority arising from possession of the stock. But that possession did not clothe the agent with apparent authority to sell other property; did not authorize the disposition of a previously declared dividend. The ostensible, as well as actual, authority was limited to disposition of the stock, and that alone. The purchasers had no right to assume that the agent, because the possessor of the stock, was also authorized to sell the dividend, that was no part of and did not pass as an incident to the stock. As to that they dealt with the agent at their peril. Supposing the agent to be acting for himself or his wife, and not for the plaintiff, they were bound to the greater caution to ascertain if there had been a transfer of the dividend by the plaintiff. It is clear that the plaintiff was not bound by any representation or agreement of his agent touching the dividend, because in respect thereto the agent was acting without authority, and beyond the apparent scope of authority flowing from possession of the stock.

3. The plaintiff received from Benjamin, and has since retained, the avails of the stock. This the defendant insists works a ratification by the plaintiff of the unauthorized act of the agent. It was doubtless competent for the defendant to have interpleaded these rival claimants to the dividend. *Salisbury Mills* v. *Townsend*, 109 Mass. 115. Instead of so doing, it paid to Chapman and Goss the dividend claimed by the plaintiff, and asserts a ratification of the contract to which it was not a party, and in behalf of those who are not before the court, nor bound by its decision. It may well be doubted if the defendant is in position to avail itself of the alleged ratification. Assuming, however, that such defense is availing to the defendant, is ratification shown? It is well established that a ratification of an unauthorized contract, to be effectual and binding upon the one sought to be bound as principal, must be shown to have been made by him with full knowledge of all the material facts connected with the transaction to which it relates, and that the existence of the contract, its nature and consideration, were known to him. But if the material facts were suppressed, or were unknown to him, except as the result of his intentional and deliberate act, the ratification will be invalid, because founded upon mistake or fraud. *Owings* v. *Hull*, 9 Pet. 629; *Bennecke* v. *Insurance Co.*, 105 U. S. 360; *Bloomfield* v. *Bank*, 121 U. S. 135, 7 Sup. Ct. Rep. 865; *Rolling-Mill* v. *Railway Co.*, 5 Fed. Rep. 852; *McClelland* v. *Whiteley*, 15 Fed. Rep. 322; *Dickinson* v. *Conway*, 12 Allen, 491.

The defendant, asserting such ratification, was therefore bound to show that it was made by the plaintiff under such circumstances as to be binding upon him, and that all material facts were made known to him. *Combs* v. *Scott*, 12 Allen, 495; *Hardeman* v. *Ford*, 12 Ga. 205. Do the facts disclose ratification? The plaintiff authorized his agent to sell the stock, at par. He conferred upon the agent no apparent authority to dispose of anything else. As to the dividend, the purchaser had no right to assume that Benjamin could dispose of it. The possession or the actual ownership of the stock, subsequent to the declaration of the dividend, gave him no apparent authority to sell the dividend. As to that they

dealt with Benjamin at their peril. . A transfer of the stock vested no legal title to the dividend previously declared. There was no actual transfer of the dividend, and none was demanded. The purchasers are chargeable with knowledge of the law that the dividend did not follow the stock; that the dividend belonged to the plaintiff, and they were bound to inquire, supposing Benjamin to be acting for himself or his wife, as to his or her ownership of this dividend. So far, therefore, the purchasers were negligent; the plaintiff was innocent.

Did the retention by the plaintiff of the avails of the stock amount to a ratification? The plaintiff received as avails of the stock the exact amount for which he had authorized his agent to dispose of his stock. He had no reason to suppose that any false representation had been made, or that his agent had assumed to dispose of any other property than the stock as the consideration for the money paid by the purchasers and received by him. Under such circumstances, the retention of the money cannot be held to be a ratification by him of the unauthorized acts of the agent, because it was retained without knowledge of the facts. *Bell* v. *Cunningham*, 3 Pet. 69, 81; *Hastings* v. *Proprietors*, 18 Me. 436; *Bryant* v. *Moore*, 26 Me. 87; *Thacher* v. *Pray*, 113 Mass. 291; *Navigation Co.* v. *Dandridge*, 8 Gill & J. 248; *Smith* v. *Tracy*, 36 N. Y. 79; *Baldwin* v. *Burrows*, 47 N. Y. 199; *Smith* v. *Kidd*, 68 N. Y. 130; *Reynolds* v. *Ferree*, 86 Ill. 576; *Roberts* v. *Rumley*, 58 Iowa, 301, 12 N. W. Rep. 323; *Bohart* v. *Oberne*, 36 Kan. 284, 13 Pac. Rep. 388; *Insurance Co.* v. *Iron Co.*, 21 Wis. 458, 464.

So far as the record discloses, the first notice which the plaintiff received that the purchasers of the stock claimed the dividend was about May 7th, when the treasurer of the defendant seems to have advised him thereof, and requested to know if the plaintiff made claim thereto. It does not appear that the grounds of the claim were then disclosed. It would seem probable that the plaintiff understood the claim to be bottomed upon the ground that by law the stock carried dividend previously declared and unpaid,—a ground insisted upon at the trial,—as the plaintiff in his letter of that date speaks of the purchaser undertaking to hold the dividend "under some technicality." There seems to have been no communication between Chapman & Goss and the plaintiff at any time touching their claim. They asserted no claim, and disclosed no ground of claim. They knew the false representation and the agreement, of which the plaintiff was ignorant, and were, I think, bound, if they sought to hold the plaintiff to a ratification of the unauthorized act of his agent, to possess the plaintiff with facts within their knowledge, and not in his, and to assert a claim founded thereon. This they did not do, but, knowing that the plaintiff claimed the dividend, remained passive so far as concerns getting information to him of the grounds of their claim. It cannot surely be said that under such circumstances the retention of the money was an act of affirmance. To so hold would place every principal at the mercy of his agent with respect to matters as to which he had conferred no apparent authority. So that if one should authorize his agent to sell his house for $20,000, and the agent

selling the house for that sum should include in the sale certain bank-stock which he was not authorized to sell, and of which he had not possession, the principal, by the mere receipt and retention of the sum which he had authorized to be taken for the house, and in ignorance of the fact that the bank-stock was part of the consideration running to the purchaser, would be bound to deliver the stock. I cannot yield assent to such doctrine. The purchaser had, in the case supposed, no right to trust the agent with respect to the bank-stock. He had not the possession of it, and was not clothed with any authority with respect to it. The purchaser was bound to inquire into the authority of the agent in such case. The reception and retention of the exact sum authorized to be taken for the house, in ignorance of the act of the agent with respect to the bank-stock, is no ratification. Otherwise the principal is bound for every unauthorized act of the agent, and the purchaser may trust the agent, who can exhibit no authority. Such a principle would be ruinous. Upon maturity of the dividend, suit was at once brought against the company. Until the trial the plaintiff is not shown to have knowledge of the facts upon which the claim of the purchasers to the dividend is based. They had not communicated them to him. He could not have learned them from the agent, for he denied the representations and agreement. This was no acquiescence, working ratification of the unauthorized act of Benjamin. The cases relied upon by the defendant are of the class, either of recognized agency or of acts adopted by the principal as done for him, where a right obtained by the agent is sought to be enforced, or where the principal receives the avails of a contract either authorized or adopted by him. The liability of the principal for the fraud of his agent is bottomed upon the principle that, by adopting the contract made by the agent, and receiving the avails, the principal assumes responsibility for the means adopted to effect the contract; but, as well observed in *Baldwin* v. *Burrows, supra*, where the cases are ably reviewed, and the lines of distinction are sharply defined, "this reponsibility for instrumentalities does not extend to collateral contracts made by the agent in excess of his actual or ostensible authority, and not known to the principal at the time of receiving the proceeds, though such collateral contract may have been the means by which the agent was enabled to effect the authorized contract, and the principal retain the proceeds thereof after knowledge of the fact." The present case is not within the class of cases relied upon. The collateral contract for the transfer of the dividend was in excess of any authority, actual or ostensible. The proceeds of the authorized sale of the stock were received in ignorance of the fraud perpetrated by the agent. The amount of such proceeds was the exact amount authorized to be received for the stock. The plaintiff, by retaining the proceeds, adopted and ratified what he had authorized. Such action cannot be tortured into ratification of unauthorized acts. *Smith* v. *Tracy*, 36 N. Y. 79; *Condit* v. *Baldwin*, 21 N. Y. 219. Judgment for plaintiff.

GRESHAM, J., concurs.