AMERICAN STEEL FOUNDRIES v. LAZEAR et al.

(Circuit Court of Appeals, Third Circuit.    February 13, 1913.)

No. 1,662.

1. CORPORATIONS (§ 156*)—PREFERRED STOCKHOLDERS—ACTION TO RECOVER DIVIDENDS.

A holder of preferred stock in a corporation, entitled under the charter and terms of his certificate to receive dividends at the rate of 6 per cent. per annum "when and as declared," cannot maintain an action in assumpsit against the corporation to recover dividends, when none have been declared by the directors; his remedy, in case the directors have wrongfully refused to declare dividends, being in equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. §, 156.*]

2. CORPORATIONS (§ 156*)—PREFERRED STOCKHOLDERS—ACTION TO RECOVER DIVIDENDS.

A statement of claim in an action at law by a preferred stockholder against the corporation to recover dividends, which did not show that any dividends had been declared on such stock that were unpaid, but did show that by the action of the stockholders, including the holders of more than 90 per cent. of the preferred stock, a plan for reduction of the capital stock and the conversion of the preferred into common stock

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had been adopted, and that most of such stock had been so converted thereunder, *held* not to state a cause of action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 581–583, 593–603; Dec. Dig. § 156.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Action at law by Thomas C. Lazear and Jesse T. Lazear, executors of the will of Alice C. Lazear, deceased, against the American Steel Foundries. Judgment for plaintiffs, and defendant brings error. Reversed.

Pam & Hurd, of Chicago, Ill., and Reed, Smith, Shaw & Beal, of Pittsburgh, Pa. (Max Pam, of Chicago, Ill., of counsel), for plaintiff in error.

H. V. Blaxter, of Pittsburgh, Pa. (Lazear & Blaxter, of Pittsburgh, Pa., of counsel), for defendants in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The defendants in error, citizens of the state of Pennsylvania (hereinafter called the plaintiffs), brought an action of assumpsit in the court below against the plaintiff in error, a corporation of the state of New Jersey (hereinafter called the defendant), to recover the sum of $4,029, the aggregate of certain cumulative dividends which they claimed were due and payable to them as the holders of 102 shares of the preferred stock of the defendant corporation.

Defendant demurred to the plaintiffs' statement of claim, on the general ground that the facts averred therein were not sufficient to support an action of assumpsit. On August 2, 1911, the court overruled the demurrer of defendant, and directed that an order be presented for judgment for the plaintiffs for the amount of the claim, with interest. On the same day, August 2, 1911, there is the following entry by the clerk:

"In pursuance of said opinion, judgment is hereby entered in favor of the plaintiffs, * * * and against the defendants * *.-* in the sum of $4,-029.00," with interest from various dates, making an aggregate of $4,398.61.

Afterwards, the record shows an entry of the following order made by the court:

"And now, September 27, 1911, the clerk having inadvertently entered judgment without an order so to do, the same is hereby stricken off. Per Curiam."

On February 9, 1912, it appears from the record that an affidavit of defense was presented in open court and leave therefor allowed to file the same "for the information of the court." On March 7, 1912, the court filed an opinion, stating:

"This cause comes before us now upon the motion and presentation of an order for judgment, the court having heretofore overruled the defendant's demurrer in an opinion filed in the cause August 2, 1911. Upon presentation of this motion for judgment, defendant has presented to the court an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

affidavit of defense, and has asked the court to permit it to be filed, claiming that it presents a defense to the plaintiffs' action upon the merits. We have carefully considered the affidavit of defense, in order to determine whether or not defendant has presented a defense upon the merits."

After discussing at length the various allegations of the affidavit, the court decided that there was no merit in the grounds of defense set forth and that "judgment will therefore be entered for plaintiffs for the whole amount of their claim against the defendant," and the clerk was thereupon ordered and directed to enter judgment accordingly. Pursuant to said order, such judgment was entered, and upon the same day the following order was made by the court:

"And now, to wit, March 7, 1912, the motion of defendant for leave to file the affidavit presented as an affidavit of defense to the action, is refused."

On this peculiar state of the rcord, the writ of error is sued out to the judgment entered by the court, after its refusal to grant the motion of defendant for leave to file the affidavit presented as a defense to the action. The affidavit was, however, as we have seen, filed for the information of the court, and was by the court discussed and considered as to its sufficiency, and because of its insufficiency the judgment of March 7, 1912, was entered: Counsel on both sides seem to have been in doubt as to whether this was a final judgment on the demurrer, or a judgment for want of a sufficient affidavit of defense, and accordingly have argued it in its dual aspect. At all events, it seems certain that the court would have declined to enter judgment on the demurrer if the affidavit filed for its information had in its opinion presented a legal defense to the action. In the following brief statement of the case, we may refer, therefore, as the court below did, to the facts presented by the affidavit of defense supplementary to those alleged in the statement of claim.

In 1897, the business and financial condition of the defendant corporation was such as to make it expedient in the interest of its stockholders that a readjustment of its outstanding stock be had. On November 7, 1907, at a directors' meeting, committees were appointed for devising a plan for such readjustment. Subsequent meetings of the directors were held for consideration of this business, resulting in a call for a special meeting of the stockholders for February 8, 1908, to consider and take action on the subject. Notices of such special meeting, with a statement of the proposed plan of readjustment, were sent to the addresses of the stockholders of record, including the plaintiffs, who, it appears, received such notice and plan of readjustment. The special meeting of stockholders called for February 8, 1908, was adjourned to March 14, 1908, and subsequent meetings and adjournments were had between that date and June 12, 1908. Some eight in number were held, as to all of which due notices were addressed to the stockholders, including the plaintiffs. At the meeting of stockholders, of June 12, 1908, the plan for readjustment of the capital stock of defendant was approved and declared effective by the affirmative vote of about 90 per cent. of all the outstanding stock, and notice of such action was sent to each of the stockholders, including the plaintiffs, and was received by them. All these matters and proceedings are set forth

in the minutes of the various meetings, and appear as exhibits attached to the affidavit of defense.

It is further averred in the affidavit that, notwithstanding plaintiffs had notice of the proceedings for the readjustment of the capital stock of the defendant corporation, and had copies of all the reports and proceedings relating thereto, with notice of each successive adjournment, yet at no time and in no way did the plaintiffs oppose or dissent from the action of the directors and stockholders of the defendant. No objection was made or protest submitted by plaintiffs, either in writing to the officers or directors of the company, or at any of the meetings of the stockholders, but, on the contrary, Thomas C. Lazear, one of the plaintiffs, who is the owner of the 102 shares of the preferred stock in question as life tenant under the terms of the will of Alice C. Lazear, actively participated in the readjustment of the capital stock of the defendant, and accepted the benefits thereof, as the owner of 71 other shares of the same preferred stock, of which he made deposit in accordance with the terms and provisions of the plan for readjustment, and received and accepted the new common stock and the new debentures of the plaintiff in error, as well as the cash dividend distributed thereon. The affidavit then states that, after the lapse of 17 days following the action of the stockholders in approving the plan, and no objection having been made, the company, on June 29, 1908, complied with the law of New Jersey, by filing with the Secretary of State of that state its certificate of change in and reduction of its capital stock, and all its proceedings in relation thereto. A notice to the effect that the Guaranty Trust Company of New York was prepared to carry into effect the readjustment so adopted and approved by the stockholders, was, under date of July 11, 1908, sent to each of the stockholders, including the plaintiffs, and was received by them. Subsequently, the preferred and common stock of defendant, theretofore outstanding and listed upon the New York Stock Exchange, were stricken from the list and the new common stock issued by defendant under said plan was substituted therefor upon the said Exchange. The affidavit then states that, notwithstanding the premises, plaintiffs at no time presented any protest or objection to the New York Stock Exchange, or to the defendant, or to any body else, or instituted any suit or proceeding to prevent the listing of the new stock by the defendant. It is further stated that out of the total of 172,400 shares of old preferred stock, all but 978 shares had assented to and been converted into the new stock. In other words, the holders of 99.66 per cent. of the old preferred stock participated in and accepted the readjustment proposed and adopted.

Upon the facts set forth in the affidavit of defense, the defendant contends:

(1) That the readjustment and conversion of the capital stock of defendant was in all respects legal and binding upon the plaintiffs and all other of its stockholders, because it received the necessary and requisite assent of the stockholders of the company, as required by the laws of the state of New Jersey, which are controlling in the premises.

(2) That such readjustment and conversion are complete and binding upon plaintiffs, because of their actual and active assent thereto

and participation therein, their conduct in the premises constituting in law an assent to the conversion of their preferred stock.

(3) That their conduct in the premises was such as to constitute in law an estoppel in pais.

Defendant therefore contends that it may avail itself of the equitable defense of estoppel allowable under the Pennsylvania practice, arising from a situation in which it appears that Thomas C. Lazear, who has a present vested life estate in the 102 shares of preferred stock, the subject of the present controversy, as the owner of 71 other shares of the same preferred stock participated in all the meetings and proceedings of stockholders had for the purpose of bringing about and putting in operation the said readjustment and plan for reducing the stock of the defendant corporation, and specifically assented thereto by the surrender of his said 71 shares of preferred stock, and receiving with the other stockholders the debentures, stock, and cash offered by the defendant in exchange for the same.

It is further contended that it is inequitable for the plaintiff to claim payment of all the undeclared and cumulative dividends on his preferred stock, withheld by him from surrender, out of a fund that was only rendered adequate for such payment in full, by reason of the surrender of their stock by other preferred stockholders.

Though judgment was entered by the court below, after discussing and passing upon all the defenses set forth in the affidavit of defense, we are constrained to regard that judgment as having been entered in the discretion of the court below on the demurrer. We therefore turn to the essential averments of the statement of claim demurred to, to wit, that the plaintiffs are the holders of 102 shares of the preferred stock of defendant company, for which certificates were duly issued to them by the company; that the contract set forth in said certificates entitled the plaintiffs to receive quarterly dividends on said stock, at the rate of 6 per centum per annum, and that in case such dividends should not be declared, the same were made cumulative. The plaintiffs received such dividends on their preferred stock until August 15, 1904, but since that date, no other dividends or payments on account of said stock had been received, defendant having suspended payment on all dividends from that date for a period of more than five years.

It is then averred that defendant has resumed the payment of dividends, but since this resumption has not paid and has refused to pay the plaintiffs anything on account of the dividends due them on their said preferred stock and paid all dividends declared by it only to the common or unpreferred stockholders, to the exclusion of all preferred stockholders. The statement of claim then states: That in the year 1908, four years after the suspension of the dividends as aforesaid, the plan of readjustment and reduction of stock was proposed and carried into effect by the assent of nearly all the stockholders, as set out in the affidavit of defense, as above referred to. That under this plan, about 90 per cent. of the preferred stockholders surrendered their stock and accepted certain debentures, cash and common stock in lieu thereof. That plaintiffs and other holders of the preferred stock declined to assent to said plan, and plaintiffs still hold their 102 shares of the preferred stock "and insist on the payment of the dividends due

thereon in accordance with the terms of the contract contained in their said certificates," which certificates are appended as an exhibit and made a part of the statement of claim. That "in the month of April, 1910, defendant set apart a dividend fund, derived from the net earnings of its business, amounting to $214,800, and declared a dividend of 1¼ per cent. *on each share of said new or unpreferred stock above mentioned,* payable to the holders thereof on the 15th day of May, 1910, and to whom it paid the same" (italics our own). The same averment is made as to what was done by defendant in the month of July, 1910, in the month of October, 1910, and in the month of January, 1911. The statement then avers as follows:

"Of the above dividend funds so set apart as aforesaid, amounting in the aggregate to $859,200, plaintiffs and the other holders of the said preferred stock who had not surrendered the same in exchange for said new or unpreferred stock, but still retained the same, were then entitled to receive the full amount of unpaid dividends due thereon, including the dividends which had accumulated during the said period of suspension, and the amount which plaintiffs were entitled to receive thereof was not less than $4,029, being in the proportion of 102 shares of preferred stock held by plaintiff, to 17,224 held by all the holders of said stock and still outstanding."

[1] Upon these averments of the statement of claim, the plaintiffs' case must on the demurrer thereto stand or fall. Plaintiffs' contention is that, under the contract, evidenced by the certificates of stock, the plaintiffs were entitled to receive from the defendant company accumulated dividends of 6 per cent., when the company, through its board of directors, set apart funds constituting profits.

It is hardly correct to speak of the certificate of stock as the contract between the shareholder and the corporation, upon which this suit is brought. Such a certificate establishes the status of the shareholder as one of the owners and constituent members of the corporation, on the basis of which a contractual relation between the shareholder and the corporation and the shareholders inter sese may in certain respects be created. Certain obligations on the part of the corporation to the whole class of stockholders represented by such certificates may be, and as in the case of preferred stockholders are, defined therein. In general, such obligations—as the obligations to pay preferred dividends, and to make the same cumulative—are obligations incurred to the whole class of preferred shareholders under the authority of its charter.

Referring to the copy of the certificate held by the plaintiffs, annexed to the statement of claim, we find that, after setting forth the fact that the plaintiffs are the owners of 100 non-assessable shares of the capital stock of the defendant company, the certificate makes the following statement as to the rights of such owners:

"The holders of preferred stock shall be entitled to receive, *when and as declared,* from the surplus or net profits of the company, yearly dividends at the rate of 6% per annum, and no more, payable quarterly on dates to be fixed by the by-laws. The dividends on the preferred stock shall be cumulative, and shall be payable before *any dividend on the common stock* shall be paid or set apart."

This statement in nowise differs from that usually made in certificates of preferred stock, and it seems too clear for argument that such

204 F.—14

statement creates no right in the plaintiffs to claim in this suit the payment of undeclared dividends.

The plaintiffs have brought an action of assumpsit, which must be maintained, if at all, on the ground that the sum claimed has been declared as a dividend on the preferred stock held by plaintiffs, and that therefore a promise by the defendant to pay the same is implied. Upon such implied promise, the suit is alone maintainable. Such implication of a promise arises from the declaration by the defendant company of a dividend on the preferred stock, not upon any alleged duty of the corporation or its officers to declare such dividend. What it or its officers ought to do, in this respect, pertains to the interior administration of the corporate functions, and belongs to the category of those corporate rights and duties which are justiciable only under the authority of the legislation of the state by which the corporation was created. For neglect or refusal by the officers of the corporation to perform a corporate function, as to the declaration of the dividend, or as to the distribution of funds asserted to be legally or equitably applicable to dividends, relief must be sought by an appropriate suit in equity, in which the chancellor may, while avoiding interference with the exercise of a due discretion by corporate officers, yet enforce the performance of a legal corporate duty. No individual debt, however, from the corporation to the stockholder is created until the dividend is declared. It is hardly necessary to cite authority for these propositions. Those cited by the plaintiff in error, however, are here referred to: 2 Cook on Corporations, § 542; 1 Morawetz on Private Corporations, § 276; Wheeler v. Northwestern Sleigh Co. (C. C.) 39 Fed. 347, 349; Knapp v. S. Jarvis Adams Co., 135 Fed. 1009, 1011, 70 C. C. A. 536.

[2] There is no averment in the plaintiffs' statement of claim, that the defendant had either earnings or surplus applicable to the payment of dividends on plaintiffs' preferred stock, nor is there any averment in the statement of claim that any dividends upon the preferred stock held by plaintiffs had been declared or paid by the defendant. It is merely averred that payment of dividends was resumed by defendant on May 15, 1910, but it is nowhere averred that payment of dividends upon the *preferred stock* of defendant was resumed at that or at any other time. On the contrary, it appears by the statement of claim that a plan for the reduction of capital stock of defendant and for the conversion of its preferred stock into common or unpreferred stock was submitted to all the stockholders, including the plaintiffs, and that such proposal was adopted by the holders of 90 per cent. of the preferred stock, and it is specifically averred in the statement of claim that the dividends were declared by the defendant on this common stock, and were payable to the holders thereof.

A careful reading of plaintiffs' statement of claim compels us to the conclusion that the averments therein contained do not constitute a cause of action. The demurrer thereto should have been sustained, and the judgment of the court below is therefore reversed, with instructions to the court below to enter judgment upon the demurrer in favor of the defendant.