THE LANCASTER TRUST COMPANY v. J. B. MASON.

(Filed 11 November, 1909.)

1. Contracts, Written — Correspondence — Shares of Stock — Divi-
dends Reserved—Questions of Law.

When the transactions leading to and consummating a sale of
certain shares of stock are embraced in the correspondence be-

tween the parties and put in evidence, it is a written contract of sale, and its construction is a question of law.

### 2. Same—Interpretation.

When the purchaser of certificates of stock in a corporation has accepted a proposition from the owner reserving the "January dividends," all sums theretofore set apart for distribution as dividends among the stockholders and payable in January following are reserved to the seller.

### 3. Same—Extra Dividends.

A purchaser of certificates of stock under an agreement reserving to the seller the dividends to be declared in January, and without the knowledge of either party the corporation had declared an extra cash and stock dividend then to be paid, is liable to the seller for the extra cash dividend and the value of the stock dividend which he thereafter has received and collected from the corporation.

MANNING, J., took no part in the decision of this case.

APPEAL by plaintiff from *Long, J.,* March Term, 1909, of DURHAM.

Civil action, brought by the plaintiff, as trustee of Margaret G. Arnold, to recover of the defendant the value of a certain dividend collected by him for the Durham Cotton Mill Company.

The facts are fully stated in the opinion of the Court.

At conclusion of plaintiff's evidence a motion to nonsuit was allowed, and plaintiff appealed.

*Giles & Sykes* for plaintiff.
*Foushee & Foushee* for defendant.

BROWN, J. The plaintiff sues to recover certain dividends declared by the Durham Cotton Manufacturing Company at the meeting of the directors of said company on 16 December, 1907, viz., a 6 per cent. extra dividend and a 50 per cent. stock dividend, said dividends amounting to $120 and $1,000, respectively.

On 16 December, 1907, the directors of the Durham Cotton Manufacturing Company met at Watts' office in the city of Durham and declared a 4 per cent. semiannual, a 6 per cent. extra and a 50 per cent. stock dividend, payable to the stockholders of record of said company on 2 January, 1908.

On said date, 16 December, 1907, the plaintiff, as trustee of Margaret G. Arnold, both of the city of Lancaster, State of Pennsylvania, was the owner of four shares of the capital stock of the said Durham Cotton Manufacturing Company of the par value of $2,000. On said date, 16 December, 1907, the defendant, J. B. Mason, a resident of the city of Durham, State of North Carolina, was a stockholder in said company.

TRUST COMPANY *v.* MASON.

On 27 December, 1907, the plaintiff forwarded to the Citizens National Bank, of Durham, N. C., four shares of stock held by it in the Durham Cotton Manufacturing Company, attached to a sight draft on J. B. Mason, the defendant, pursuant to the following letters and telegrams, which said letters and telegrams embrace the contract of sale of said stock by the plaintiff to the defendant, viz.:

(*a*)

"DURHAM, N. C., 19 December, 1907.

"LANCASTER TRUST COMPANY,
     *Lancaster, Pa.*

"DEAR SIR:—Some time ago I was informed that you had a client who desired to dispose of some stock of the Durham Cotton Manufacturing Company. I was not in a position to handle any at that time; but if you still hold this stock, I would handle it promptly at $650 per share, and if you desire to accept this offer you can forward certificate to J. Harper Erwin, treasurer of Durham Cotton Manufacturing Company, with instructions to transfer same on payment of above price. This offer is for not over ten shares. Please advise prompt acceptance of this offer by wire, at my expense, and oblige,

     "Yours truly,     J. B. MASON."

(*b*)

"LANCASTER, PA., 23 December, 1907.

"MR. J. B. MASON,
     *Durham, N. C.*

"DEAR SIR:—We are in receipt of your favor of the 19th inst., stating that you would handle the four shares of the Durham Cotton Manufacturing Company's stock at $665 per share. In reply, beg to say that we have other parties who are desirous of purchasing this stock. If you will put an offer into our hands of $675 per share, *allowing the January dividend to us*, we will consider making the sale. To this note we await your prompt reply.     Yours very truly,     JOHN HERTZLER,
     *President.*"

Telegram from Mason to Lancaster Trust Company:

(*c*)

"DURHAM, N. C., 25 December, 1907.

"JOHN HERTZLER,
     *President Lancaster Trust Company,*
     *Lancaster, Pa.*

Answering your letter 19th, your offer accepted. Attach stock, properly endorsed, to demand draft at price named, with Janu-

TRUST COMPANY *v.* MASON.

ary ·dividend added, and I will honor same on presentation. Send draft to Citizens National Bank, this city, and same will be remitted at par. Send stock to reach here Saturday. Party out of town after this date. Answer.      . J. B. MASON."

(*d*)

"DURHAM, N. C., 25 December, 1907.
"JOHN HERTZLER,
      *President the Lancaster Trust Company,*
                      *Lancaster, Pa.*

"DEAR SIR:—I wired you to-day as follows, which I now beg to confirm: 'Answering your letter of the 19th, your offer accepted. Attach stock, properly endorsed, to demand draft at price named, with January dividend added, and I will honor same on presentation. Send draft to Citizens National Bank, this city, and same will be remitted at par. Send stock to reach here Saturday. Party out of town after this date. Answer.'

"My client will leave Saturday, and he desires to know whether he will get the stock in order that he could arrange payment for same before leaving; hence I telegraphed instead of writing. The offer is for $675 per share, with January dividend.                 Yours very truly,
                               . J. B. MASON."

(*e*)

"LANCASTER, PA., 27 December, 1907.
"J. B. MASON,
      *Durham, N. C.*

"Offer accepted. Will forward four shares to-day to Citizens National Bank.                     JOHN HERTZLER,
                              *President.*"

(*f*)

"LANCASTER, PA., 27 December, 1907.
"MR. J. B. MASON,
      *Durham, N. C.*

"DEAR SIR:—We are in receipt of your telegram, under date of the 25th inst., as follows:

"'Answering your letter 19th, your offer ·accepted. Attach stock, properly endorsed, to demand draft at price named, with January dividend added, and I will honor same on presentation. Send draft to Citizens National Bank, this city, and same will be remitted at par./ Send stock to reach here Saturday. Party out of town after that date. Answer.'

"To which we have replied this morning, as follows:

"'Offer accepted.  Will forward four shares to-day to Citizens Bank.'

"We are also in receipt of your letter of the 25th inst.  We are to-day forwarding the four shares Durham Cotton Manufacturing Company stock to the Citizens Bank, Durham, with instructions to deliver same to you upon the payment of $2,780.  Any charges the bank may make for this transaction are to be paid by you.                              Yours very truly,

JOHN HERTZLER,
*President.*"

On 31 December, 1907, the four shares of stock purchased by J. B. Mason of the Lancaster Trust Company, trustee, were transferred on the books of the Durham Cotton Manufacturing Company—two shares to J. B. Mason and two shares to Y. E. Smith, superintendent of said company.

The 4 per cent. semiannual and the 6 per cent. extra dividends were paid to the defendant, J. B. Mason, and Y. E. Smith, and the stock representing the 50 per cent. stock dividend was issued to them.  Only the 4 per cent. semiannual dividend has ever been received by the Lancaster Trust Company, trustee.  At defendant's suggestion, that was embraced in the draft drawn by plaintiff for the purchase price of the stock certificates and voluntarily paid by defendant, although admittedly not embraced in the contract of sale.

The validity of the payment of the dividends by the corporation to Mason and Smith is not questioned, as they were the owners of record of this stock on 31 December, 1907, and the corporation had no notice of the plaintiff's claim.

The question is, as between plaintiff and defendant, did the latter acquire title under the contract of sale to anything more than the certificates of stock duly assigned to him?  If he acquired title to nothing more, then he and Smith are jointly liable for the extra dividends which they wrongfully collected as stockholders of record, for it seems to be admitted, or, if not admitted, it appears plainly enough that in the purchase of the stock the defendant was acting as the agent of Smith as well as for himself.

The "friend and client" referred to by defendant as being in such a hurry to "leave town on Saturday," and for whom the defendant professed to be acting, does not seem to materialize and appears to be as mythical a character as Sarey Gamp's celebrated friend, Mrs. Harris.

The entire contract being in writing, it is a matter for judicial construction, and in construing it we think the court below was

in error. We are aware that this Court has once decided that a sale of shares of stock in a corporation carries with it the dividends declared by the company, when they are to be paid at a day subsequent to the transfer of the stock. *Burroughs v. Railroad,* 67 N. C., 377.

In his valuable work on Corporations, Judge Womack states that this case is against the great weight of authority. Section 520. But it is not necessary now to question it.

In this contract of sale there is an express reservation of the January dividend. The word "dividend" denotes a fund set apart by a corporation out of its profits, to be apportioned among the shareholders. Black Law Dicty., p. 381.

This fund had been set apart on 16 December, 1907, and the contract of sale was made on 23 December. If the language of reservation will embrace the 4 per cent. dividend it will likewise embrace the others. The plaintiff did not reserve only the so-called regular dividend. He reserved the "January dividend." The reasonable and natural construction is that plaintiff intended to reserve and did reserve any dividend payable in January. It is a matter of common knowledge that corporations frequently declare extra dividends at the close of the year, payable when their regular dividends are payable. Such dividends are as much dividends of this corporation as their regular dividends. It is therefore manifest that plaintiff intended to reserve all sums set apart for distribution among stockholders in January, and intended to sell only the naked stock certificates.

This construction is fortified by the fact that in defendant's letter of 19 December he proposes to buy, not the new stock to be issued, but the shares which plaintiff had previously held.

It is true that at defendant's suggestion the plaintiff added the 4 per cent. dividend to the purchase price of the original shares and drew on defendant for the total amount, but that was done for convenience and was no part of the terms of sale. It is perfectly manifest that plaintiff did not know of the existence of this large melon to be cut and distributed in January. It is not to be supposed that plaintiff intended to sell something that neither plaintiff or its client knew that the latter owned.

Plaintiff's *habitat* was a long distance from Durham, and this news had not traveled in nine days even the short distance from Watts' office to defendant's banking house; for, although defendant was then a stockholder, he swears in his answer that when he purchased plaintiff's stock he had never heard of the extra dividends. It is therefore equally manifest that he did not intend to purchase anything more than the original shares of stock. He could not have intended to buy that which he did not know of.

From defendant's own admission, the extra dividends were not in the contemplation of either party to the contract. The entire correspondence, along with defendant's answer, indicates that the minds of the seller and the buyer met in one common understanding, and that the contract embraced and was intended to embrace only the original shares of stock held by Margaret Arnold.

It is immaterial to consider whether defendant was actually purchasing for his friend, who was so anxious "to leave on Saturday," or not. The evidence shows that these identical shares were transferred directly to him and his associate, Smith, and that they received the extra dividends.

We are of opinion that his Honor erred in sustaining the motion to nonsuit, and that upon the facts contained in this record the plaintiff is entitled to the special cash dividend of 6 per cent. and the cash value of the stock dividend, with interest from the date when received.

As this case is to be tried again, we think it proper to suggest that Y. E. Smith·be made a party defendant. The judgment of nonsuit is set aside.

New trial.