BOWERS v. POST.

(District Court, N. D. Illinois, E. D.   November 15, 1913.)

No. 30,603 (Term No. 7,286).

1. CORPORATIONS (§ 157*) — STOCKHOLDERS — INCREASE OF CAPITAL AS STOCK
DIVIDEND—EFFECT OF SUBSEQUENT SALE OF STOCK.

A corporation, having a capital stock of $500,000 and large surplus and
undivided profits accounts, by action of its stockholders and directors in-
creased its capital stock to $750,000, the resolutions providing that one-
half of the increase should be distributed to the then stockholders as a
stock dividend, and the remaining half sold to employés at not less than
$200 per share, and that "all proceeds of such stock so sold shall belong
to, and be distributed to, the holders of the present or original capital
stock." Details of the plan were provided for, including the appointment
of the secretary a trustee, to handle the employés' stock sales, and a part
of whose duties should be "to collect and receive all dividends declared
upon any stock so sold to employés and to distribute the same pro rata
to the holders of said original stock." The par value of the increased
stock, $250,000, was at once credited to the stock account and debited to
the undivided profits account, which exceeded that amount, and as the
trustee collected for the employés' stock sold he credited each of the origi-
nal stockholders in a book kept by him for the purpose with his pro rata
share of the proceeds. *Held*, that the entire increase of stock was clearly
intended as a dividend to present stockholders, one half to be distributed
in stock and the other half to be sold to employés for business reasons, but
for their benefit, and that the right to such dividend vested at once, and
did not pass by a subsequent sale and assignment of stock, although actual
distribution had not been made.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 584–586;
Dec. Dig. § 157.*]

2. CORPORATIONS (§ 157*) — STOCKHOLDERS — TRANSFER OF STOCK — ACCRUED
DIVIDENDS.

One who was a stockholder at the time of the adoption of such plan,
but subsequently transferred his stock, is entitled to retain dividends re-
ceived by him from sales of employés' stock, and also to such as may
have been collected after the transfer, notwithstanding a further provi-
sion of the resolutions adopted that the proceeds of employés' stock, when
collected, should "be at once distributed to the holders of the said origi-
nal stock in proportion to their respective holdings at the time of such
distribution"; the same language having been used with respect to the
distribution of the stock to be issued as a direct stock dividend.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 584–586;
Dec. Dig. § 157.*]

At Law. Action by James F. Bowers, trustee, against Charles N.
Post. On pleas of general issue and set-off. Finding for defendant
on plea of set-off.

Lyon & Healy is a corporation organized some years ago under the laws of
the state of Illinois. Its business has prospered. In January, 1904, it had a
capital stock, fully paid, of $500,000, a large surplus, and a large amount of
undivided profits. On January 9, 1904, John P. Byrne, as secretary of the
company, sent an official notice to all the stockholders of a meeting to be held
on January 30, 1904. The following is the notice:

"Chicago, January 9, 1903 (1904).

"As provided by article 8 of the by-laws of this corporation, you are hereby
notified that the annual stockholders meeting will take place on Saturday the

30th inst. at the office of the corporation, #199 Wabash avenue, in this city, at the hour of ten (10) o'clock a. m.

"At this meeting a new board of directors, five in number, is to be elected, the annual report of the business of the corporation is to be submitted and such other business transacted as may properly come before the meeting.

"The stockholders here have unanimously felt for some time that the capital stock of the company ought to be increased from $500,000 (5,000) shares to $750,000 (7,500) shares, and that a stock dividend of one-half of the increase ought to be declared in favor of the present stockholders, and that one-half thereof ought to be sold to the employés of the company. The cash proceeds of such sales are also to be distributed to the holders of the original stock. Therefore the present stockholders will receive a stock dividend of $125,000 and will also receive the cash proceeds of sales of a like amount. All time sales are to draw 4% interest and be secured by certificates of the stock so sold.

"The law of this state requires a two-thirds vote of all the original stock, but it is desirable to have the vote unanimous if possible inasmuch as it is a friendly proceeding in the interests of the present stockholders.

"We inclose draft of proxy which we would be pleased to have you sign and forward as soon as practicable.

"We inclose draft of resolutions to be presented to the stockholders meeting; they have been carefully prepared and will probably be adopted without any material change.

"It is agreed among the stockholders here that the board of directors shall arrange so that the secretary of the company shall act as trustee (without expense) and receive all notes, securities, and monies on account of such sales and distribute the proceeds to the owners entitled thereto.

"Yours truly,                               J. P. Byrne, Secty."

The meeting was held pursuant to that notice, and all the stockholders being present, either in person or by proxy, the following resolutions were passed:

"Whereas, it clearly appears that the property and business of this company, Lyon & Healy, is at a fair cash valuation worth the sum of $1,500,000.00; and

"Whereas, in the judgment of this meeting there ought to be a stock dividend declared in favor of the present stockholders, and there ought to be stock provided for to be sold to sundry of the employés of the company, so that they may become more deeply interested in the business, therefore:

"Resolved, that the capital stock of this company, Lyon & Healy, ought to be and the same is hereby increased $250,000.00, so that the entire capital stock of the company shall be $750,000.00, and so that each share of the stock so increased shall be worth $200.00 per share. The officers of this company are directed to take steps to have such increase finally accomplished according to law.

"Resolved further, that 1,250 shares of such increase shall be issued and distributed as a stock dividend to the present stockholders in proportion to their respective holdings at the time of such distribution, which distribution shall be made as soon as practicable after the necessary proceedings shall have been had perfecting such increase.

"Resolved further, that the remaining 1,250 shares of such increase shall be retained until sold to employés of the company, at not less than $200 per share to such persons and in such amounts and on such terms as the board of directors shall direct.

"Resolved further, that all proceeds of such stock so sold shall belong to and be distributed to the holders of the present or original capital stock and our board of directors shall so arrange that when any part of such stock shall be sold and collected for, the proceeds shall be at once distributed to the holders of the said original stock in proportion to their respective holdings at the time of such distribution."

Immediately after the stockholders' meeting, the directors of the company met, and the following preambles and resolutions were adopted:

"Whereas, at the regular annual meeting of the stockholders of this company held at the company's office on the 30th day of January, 1904, at ten o'clock a. m., it was determined and duly voted to increase the capital stock of this

corporation from $500,000 to $750,000 and the officers of the corporation were directed to take steps to have such increase finally accomplished according to law, and

"Whereas, this board of directors fully concurs in the propriety of such increase. of. our stock and in all the proceedings of said stockholders meeting to that end and in the disposition to be made of such increased stock:

"1. Therefore resolved, that the proper officers of this company are hereby directed to issue at once one-half of such increase, to wit, 1,250 shares as and for a stock dividend to the holders of the original 5,000 shares and deliver certificates thereof to such.

"2. Resolved further, that the remaining one-half of such increase, to wit, 1,250 shares to be sold to certain employés of this company as may be indicated and that certificates therefor be issued to such employés as purchasers in such amounts and at such times as this board of the company's officers may direct. Such stock shall be sold only to such persons so indicated at the price of $200.00 per share. Stock certificates shall be issued to such purchasers but such certificates shall be assigned by such purchasers respectively and held by the company as security for the full payment of such stock.

"3. Resolved further, that any purchaser of any of such stock may pay in cash the purchase price thereof in whole or in part, or at his option the purchase price may be paid wholly or in part by the dividends declared thereon which dividends when declared shall be credited to such purchasers from time to time and until any balance due from him on such purchase account shall be fully paid and when fully paid then such stock shall become his property subject to such rules or by-laws as may exist or be adopted governing or controlling the same, and subject to the provisions of these resolutions.

"4. Resolved further, that in case any such purchaser shall for any reason be discharged from the employ of this company or shall for any reason resign from such employ, then in any such case any of the stock having been purchased by him herein shall be surrendered to the company and the company shall retain the certificate therefor free from any claim on his part, but the company shall refund to him such amount as may be due to him upon any adjustment of the account with him. In adjusting that account he shall be entitled to receive per share for his stock the sum or amount of its board rate value then existing as last established by the board rate committee. From that sum or amount shall be deducted all amounts due or owing from him to the company upon account for such stock or upon any other account. The company shall thereupon have the right to hold and control such certificate so surrendered and to do as it may see fit with the stock therein mentioned free from any claim of any kind whatsoever on the part of such purchaser. In case of death of any of such purchasers a settlement and adjustment on the same lines shall be made with his estate.

"5. Resolved further, that any certificates so surrendered shall be cancelled and new certificates or certificate may be issued for such stock and distributed pro rata to the then holders of said original stock upon their payment to the company in money the then existing board rate valuation. In case any holder of original stock shall fail, neglect or refuse for ninety days after notice of such proposed distribution, to pay the company his proper proportion of such amount then the portion otherwise coming to him may be distributed to such holders of original stock as may pay the proper amount therefor. In case no one shall be willing to make such payment within ninety days after written notice, then the board of directors may sell such stock for the best price obtainable in money and place the proceeds thereof in the company treasury.

"6. Resolved further, that the certificates issued to any such purchaser shall be in such form with such matter printed thereon as this board or its officers may direct and there may be written or printed thereon a provision reading thus: This certificate and the stock herein mentioned are subject to the provisions of resolutions adopted by the board of directors on January 30, 1904.

"7. Resolved further, that nothing contained in these resolutions or involved in the sale or sales of any of such increased stock shall in any manner take away or affect the right of this company to discharge for any reason from its employ any purchaser of any of such stock.

"8. Resolved further, that the secretary of this company shall act as trustee without charge or expense and as such trustee shall hold all agreements, stock certificates or other writings or memoranda pertaining to any sale of any of such increased stock and shall keep or cause to be kept an accurate account of all such transactions to the end that proper proceedings may be taken for the full protection of the holders of said original stock. It shall be the duty of such trustee to collect and receive all dividends declared upon any stock so sold to employés and to distribute the same pro rata to the holders of said original stock."

On May 10, 1904, the directors of the company readopted the January 30, 1904, resolutions with slight modifications, that is to say, the unpaid subscriptions to the "employés' stock" were made to bear interest at the rate of 4 per cent.; and further it was provided:

"That any certificate surrendered by any such purchaser (employé) shall be canceled and the stock shown thereby may be sold by the company to another employé or employés upon the same terms and conditions as originally sold, but at the valuation then last fixed by the board rate committee. The board of directors may take such time as it may deem advisable to determine whether to make further or other sale of the stock so surrendered, and when it shall be determined not to make the same, then new certificate or certificates for such stock may be issued and distributed pro rata to the then holders of original stock."

Immediately after the passage of these resolutions, the capital stock account of the company was increased by $250,000, and the undivided profit account diminished by the same amount. Contracts for the sale of all of the "employés' stock" were at once made with different employés of Lyon & Healy.

John P. Byrne continued to be secretary of the company until May 18, 1908, and ex officio was trustee of the "employés' stock." On that date James F. Bowers was appointed secretary of the company, and by that fact became trustee and successor to Byrne.

The stock sold to employés was not entirely paid for until the 20th of April, 1911. During the period from 1904 until the stock was paid for a number of employés left the company and one or more died. Those, or their legal representatives, were paid the amount provided for in such event, and their stock was surrendered. The surrendered stock, however, was sold again to other employés, and was paid for in due time.

The proceeds of the "employés' stock" was deposited in the bank to the credit of Lyon & Healy; and on the books of the corporation was kept an account entitled, "John P. Byrne, Trustee," while he was secretary, and afterwards "James F. Bowers, Trustee."

The amount due upon the "employés' stock" which was surrendered to the company owing to the death of the employé, or his leaving the company, was paid by check of the corporation, and the trustee's account was correspondingly debited.

While Byrne was trustee he kept a book in which was stated the account of each employé who purchased "employés' stock," and also with each one of the stockholders of the original stock. This book was opened shortly after January 30, 1904, and following the name or designation of each account with the old stockholders appeared the words, "Surrendered Cap. Stk. a/c.," and each of the old stockholders was credited with an amount equal to the proportion of the proceeds to be collected from the "employés' stock."

This book was kept by Byrne personally. Most of the local stockholders of the corporation never saw the book until after June 1, 1908, and it does not appear affirmatively from the record that any of the stockholders other than Byrne knew of the existence of the book, although they knew Byrne was trustee; they never asked whether he kept such a book, or, if he did, for the privilege of examining it.

During the latter part of the year 1907, Lyon & Healy purchased the stock of the defendant, Charles N. Post, amounting to 1,096 shares. The price was agreed upon, and in addition Post was paid his salary as president of the company for the balance of the fiscal year ending February 1, 1908, and an assignment was given to him of any claim the company might have against Charles

N. Post. Charles N. Post then resigned as an officer and director of the company, and retired from business.

John P. Byrne continued to act as trustee for the employés' stock fund until some time after May 22, 1908, although on the 18th of May, 1908, he was succeeded in that office by James F. Bowers. Between December 6, 1907 (the day on which Post sold his stock), and the 1st day of June, 1908, Byrne paid to the defendant $6,872.09. This payment was made by check of Lyon & Healy, and the trustee's account in the books of Lyon & Healy was debited with those payments and the Post account correspondingly debited. It was not until after the 22d of May, 1908, that the stockholders of Lyon & Healy learned that Byrne, as trustee, had made these payments.

It also appears that the Haynes estate of Boston was the owner of 943 shares of the capital stock of Lyon & Healy; that on August 5, 1909, that stock was sold to the corporation, and after that time Byrne, as trustee, paid to the proper representatives of the Haynes estate $8,688.05 proceeds from the "employés' stock"; that those payments were made without the specific knowledge of any of the other stockholders of Lyon & Healy. The record does not show that the stockholders, other than Mr. Byrne, knew of or consented to the payment to the Haynes estate or to Post after the purchase of the Haynes and Post stock by the corporation.

There is conflict in the evidence as to whether or not the "employés' stock" and the rights thereto were mentioned when the sale of the Post stock was consummated. In the view which I take of the case it is unnecessary to settle that controversy.

On September 8, 1911, plaintiff herein commenced an action in assumpsit in the superior court of Cook county, the declaration consisting of a special count and the common counts, seeking to recover $6,872.09, together with interest thereon, paid by mistake to the defendant. The defendant removed the cause to this court, and filed pleas of the general issue and set-off for further distribution of the "employés' stock fund."

Richard W. Clifford and William B. Jarvis, both of Chicago, Ill., for plaintiff.

Moses, Rosenthal & Kennedy, of Chicago, Ill. (Joseph W. Moses and Edward D. Wallace, both of Chicago, Ill., of counsel), for defendant.

CARPENTER, J. (after stating the facts as above). [1] Several points have been argued earnestly and ably by counsel, but the interesting proposition in this case, and the controlling proposition, is the construction of the resolutions of the stockholders and board of directors. There is some ambiguity in the terms used; whether resulting from carelessness or design is immaterial. In endeavoring to reach a conclusion as to what the parties intended by the language used, it is necessary, so far as is possible, to get into the atmosphere surrounding them when the resolutions were passed; to become acquainted with their general plan, and, if you please, with their "habits of language." In other words, having discovered their general situation and purpose, and knowing their peculiarities and eccentricities, you must then determine what they meant by what they did.

As to the general scheme: Lyon & Healy had issued capital stock of 5,000 shares, and in 1904 had accumulated a large surplus and a large amount of undivided profits. The notice sent out to the stockholders, the action of the stockholders, and the action of the board of directors which approved the action of the stockholders, all indicate that it was the purpose of those interested to make a division of some of the accumulated earnings. To this end it was voted to increase the capital

stock of the corporation 2,500 shares. As to one-half of the increase, clearly it was intended to declare a stock dividend. As to the other one-half, it was determined that for the good of the enterprise certain trusted employés should become stockholders. They were to pay for their stock as it was convenient, with interest on the deferred payments. The proceeds accumulating from the sale of "employés' stock" was to be distributed among the stockholders of the company.

The difficulty arises in the wording of the resolutions. The stockholders and directors determined:

"That all proceeds of such stock so sold shall belong to and be distributed to the holders of the present or original capital stock, and our board of directors shall so arrange that when any part of such stock shall be sold and collected for, the proceeds shall be at once distributed to the holders of the said original stock in proportion to their respective holdings at the time of such distribution."

[2] The plaintiff contends that Post, having disposed of his stock, by that very circumstance divested himself of all interest in the "employés' trust fund," and that the words "in proportion to their respective holdings at the time of such distribution" are conclusive on this point. The same language was used with reference to the 1,250 shares of stock dividend. It is conceded that the stock dividend proper would not pass by a sale of the original stock, after the resolution of the directors on January 30, 1904. That language, used in connection with the "employés' stock," ought not to be given a different meaning unless a different intent is manifestly clear.

The resolution was drawn in the light of existing conditions and must be viewed from a practical standpoint. At the time it was passed, Lyon & Healy had a capital stock of $500,000, a surplus of $750,000, and undivided profits of $500,000; the value of each share of stock in the company, therefore, was $350. The owners of the 5,000 shares were the owners in common of the assets of the company, and had the company then been liquidated each one would have been entitled to his ratable proportion of the capital, surplus, and undivided profits.

Immediately after the passing of the stockholders' and directors' resolutions, the capital stock account of the corporation was credited upon its books with $250,000, and the undivided profits account was charged with the same amount of money. Thus the new stock issue of 2,500 shares was immediately paid for, and out of the interest of the then stockholders. Instead of having an interest in $250,000 of undivided profits, the stockholders became entitled to receive their proportionate share of the increased capital stock.

The corporation, through its stockholders and directors, immediately segregated $250,000 of its undivided profits and credited the amount to its capital stock account. That asset, when segregated, belonged to the stockholders, and took the form of new shares of stock fully paid, belonging to the shareholders in proportion to their respective holdings. The corporation, as such, ceased to have any interest in the increase; it had received full payment. If, as contended by plaintiff, the "employés' stock" had been held by the company to be sold at $200 a share,

the purchase price would have belonged to the company and would have passed to its treasury. If the parties interested had contemplated such action, the book entries in evidence never would have been made. The books of the company showed no debit entries against the purchasing employés, nor in any of its financial statements made during the years succeeding 1904 did it credit itself with the indebtedness of the employés on account of stock purchases. Moreover, it is stated unequivocally that the purpose of the shareholders and directors was to make each share of stock of the company worth $200. If the stock to be sold to the employés belonged to the company, then each share would have been worth, book value, $233, and the employés, immediately after their purchase, would have had a profit of one-third on their transaction. On the other hand, if the "employés' stock" passed as an incident to the ownership of the original shares, then all the original shares would have been worth $250 each, and the employés' shares would have been worth $200 each.

It is clear that the corporation neither had nor asserted a right to the new stock. If the corporation surrendered its rights, who succeeded to them? Who had the right of succession? The increase of stock was intended to be paid out of the undivided profits. That was done. The normal instincts of mankind cannot be overlooked by the courts in administering the law. We have in this case the joint owners of a large amount of property deciding to divide up some of it. Is it likely they made the division with the purpose in view that others than themselves should get the benefit of it? A melon ordinarily is cut for the benefit of the owners of the melon patch.

It is argued for plaintiff that the resolution of the directors making the "employés' stock" fully paid, and providing that in certain events the stock sold to employés should be taken over by the corporation at what was paid for it, and sold to the original stockholders according to their holdings, the proceeds to go into the treasury of the company, is inconsistent with the idea of an absolute segregation of that stock. Quite the contrary is true. The original holders of stock, having received a cash return for the "employés' stock," naturally would not receive the surrendered stock, or its value, because it was not intended there should be a double profit on the transaction. It was proper therefore to provide that the subsequent purchase of the "employés' stock" should come from the company, and that the proceeds of the resale should go to the company; it being apparent that the purpose of selling the "employés' stock" was to increase the interest of the employés in the company and to stimulate them in the common interest.

Moreover, paragraph 8 of the directors' resolutions provided certain methods for issuing the "employés' stock" and the appointment of a trustee to receive the proceeds thereof, and made it "the duty of such trustee to collect and receive all dividends declared upon any stock so sold to employés, and to distribute the same pro rata to the holders of said original stock." Here again the right of the holders of the original stock was emphasized. The language used amounted to a declaration of the directors of an immediate dividend of the proceeds of the "employés' stock." The right of the shareholders was deter-

mained upon the adoption of the stockholders' and directors' resolu- tions; the enjoyment only was postponed at 4 per cent. interest. It was an immediate vested estate, the enjoyment of which was post- poned merely for the convenience of the estate and for the purpose of arranging the necessary details of disposing of the stock to the em- ployés.

If it had been intended that the proceeds of the sale of stock to the employés should be paid to whomsoever was the holder of the stock at the time such proceeds were ready for distribution, it would have been easy to have so provided. It was not so provided, nor was it so intended. It cannot be supposed that the holders of shares in the Lyon & Healy company were so altruistic as to take their own money to provide dividends for persons not known to them. And it may very well be doubted if the directors of a corporation have the legal right to declare a dividend out of present earnings, and provide for its payment, not to the present shareholders, but to some subsequent trans- ferees.

In the view I take of the transaction, every stockholder surrendered a pro rata of his interest in the surplus of the corporation, to be trans- formed into stock and sold to employés; that such surrendered in- terest was intended to be and was treated as belonging to each indi- vidual stockholder at the time the action was taken. Otherwise the stock would have been issued by the corporation to the employés and the proceeds received by the corporation. The rights of the stock- holders were fixed, the realization only being postponed; and each stockholder so surrendering his interest is entitled to payment there- for regardless of whether or not he disposed of his holdings of orig- inal shares. It was a stock dividend, and when the defendant Post sold his stock he sold it, in commercial parlance, ex-dividend.

There will be a general finding against the plaintiff, and a finding in favor of the defendant on his plea of set-off for the sum of $3,614.71.