**Silas M. Ford, Appellant, v. Ford Manufacturing Company, Appellee.**

### Gen. No. 26,279.

1. CORPORATIONS—*estoppel of stockholder and officer to question records.* A stockholder and officer of a corporation who, upon selling all of his shares of stock and severing his connection with the corporation, executed an instrument providing: "I ratify, approve and confirm the minutes of the meetings of the stockholders and the minutes of the meetings of the board of directors as they are recorded in the records of said company," was thereby precluded from questioning the accuracy of the record of a certain prior meeting with reference to a resolution declaring a dividend.

2. CORPORATIONS—*how records to be kept.* A corporation can speak only through its records, and the record of its acts must be kept faithfully in order to protect the rights of stockholders and persons doing business with the corporation, and public policy requires that they be so kept.

Ford v. Ford Manufacturing Co., 222 Ill. App. 76.

3. CORPORATIONS—*how records may be impeached.* Persons desiring to impeach the accuracy of the records of a corporation must do so in a direct proceeding to correct the record rather than by parol evidence in a collateral action, especially upon such a subject as the declaration of a dividend.

4. CORPORATIONS—*stockholders' rights as to dividends.* Until a dividend has been declared, the stockholders have no legal right to any share in the profits of the company, but when the directors have taken action and declared a dividend, each has a right to share in the dividend in proportion to his stock, and the relation between the corporation and the stockholder becomes that of debtor and creditor.

5. CORPORATIONS—*effect of transfer of shares after declaration of dividend.* When a dividend has been declared it becomes the separate property of the stockholder, wholly disconnected from his shares, and does not pass with the shares upon their subsequent transfer unless the contract of transfer expressly so provides, regardless of the date at which the dividend is made payable.

6. CORPORATIONS—*right of transferee of stock to subsequently declared dividends.* When shares of stock are transferred without an agreement to the contrary, the transferee will be entitled to all dividends declared thereafter though the profits out of which the dividends are declared were earned prior to the transfer.

7. CORPORATIONS—*effect of resolution declaring dividend.* A resolution of a corporation declaring a dividend on the entire capital stock "payable in equal monthly instalments to the stockholders of record on the last day of each month during the year 1917," indicates a clear intent on the part of the directors to make the dividend payable to the owners of the stock at the time of payment of the dividend.

8. CORPORATIONS—*stockholder transferring stock to corporation after declaration of dividend payable in instalments.* Where a stockholder sold to the corporation his shares of stock upon which a dividend had been declared, payable in monthly instalments during a period of one year, the fact that in the settlement that was made he was charged with a sum which had been overdrawn by him for dividends accruing after April 1 of that year amounts practically to an admission on his part that he was not entitled to any dividends after that date; and the further fact that the price paid for his stock amounted to its par value plus the dividend also tended to show that the dividend was taken into account in fixing the price paid for his stock and in adjusting the accounts between the parties.

9. CORPORATIONS—*when stockholder transferring stock to corporation cannot question previously declared dividend.* Where a

stockholder and officer of a corporation withdrew therefrom and sold his stock. to the corporation, *held* that, under the circumstances, good faith on his part should preclude him from questioning the power or right of the directors in declaring a dividend out of present profits and providing for its payment to persons who should be stockholders at the time deferred payments of the dividend should become due.

10. CORPORATIONS—*demand as prerequisite to suit to recover dividend on transferred stock.* A former stockholder and officer of a corporation who sold his stock to the corporation and withdrew therefrom should have made a demand upon the corporation for a dividend claimed to be due him before commencing a suit therefor.

11. CORPORATIONS—*when declared dividends pass on transfer of stock.* Where the resolution of a corporation declaring a dividend payable in instalments during the period of a year clearly indicated an intent that the dividend should be payable to owners of the stock at the time the deferred payments should be made, and one who sold his stock to the corporation concurred in such a construction of its terms, an exception was warranted to the general rule that dividends belong to the owners of stock at the time of the declaration of the dividend.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed October 4, 1921.

LUBY & EWEN, for appellant.

LITSINGER, HEALY & REID, for appellee; JAMES J. FINN, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

Action was brought by the appellant in the municipal court of Chicago to recover from the defendant the sum of $9,120.15, alleged to be due the plaintiff for a dividend declared by the defendant corporation in the year 1917. The statement of claim alleges that on February 20, 1917, plaintiff was the owner of 4059.4 shares of the defendant's capital stock of the par value of $100 per share; that on February 20, 1917, the defendant declared a dividend of $3 per share on its out-

standing capital stock, payable in twelve equal monthly instalments on the last day of each and every month during the year 1917, by virtue of which action plaintiff became entitled to receive dividends on his stock in the sum of $12,160.20, payable in twelve monthly instalments of $1,013.35 each; that the instalments of dividends were paid for the months of January, February and March, 1917, but are unpaid for the remaining months to the amount of $9,120.15, with interest, making the total amount of the plaintiff's claim $10,500.

The affidavit of merits sets forth the resolution of the defendant company on February 20, 1917, which was as follows: "Motion was thereupon made by F. M. Stresenreuter, seconded by Mr. L. M. Ford, to declare a dividend of 3% on the entire capital stock of this company, said dividend to be payable in equal monthly instalments to the stockholders of record on the last day of each month during the year 1917, beginning with the month of January of said year." The affidavit of merits further alleges that on May 14, 1917, the plaintiff sold all of his capital stock in the company, such sale taking effect as of April 1, 1917, and that by virtue thereof plaintiff ceased to be a stockholder and had no further claim to the dividend, and that the sale was incorporated in a certain contract dated May 14, 1917, which contract is set out in full in the affidavit of merits; also that prior to April 1, 1917, plaintiff had drawn dividends of $962.87 in excess of the amount to which he was entitled on April 1, 1917, and that under the contract of May 14, 1917, the plaintiff refunded said amount to the defendant and that then and there an account was stated between the parties which adjusted and settled in full the plaintiff's claim for dividends.

The case was tried before the court without a jury and at the conclusion of the plaintiff's evidence a motion was made for a finding in favor of the defendant,

which was allowed, and judgment was entered upon the finding. A reversal of that judgment is now sought upon the ground that a dividend which has been declared payable at a future date belongs to the owner of the stock on the date it was declared and does not pass to a transferee of the stock who obtains title between the date the dividend was declared and the date on which it was payable, even though by the terms of the resolution declaring the dividend it was made payable to stockholders of record on the date of payment. It is also urged that the trial court should have received and considered evidence offered by the plaintiff tending to impeach the accuracy of the record of the meeting of directors at which the dividend was declared, and also that the contract of May 14, 1917, did not constitute an account stated or settlement of all matters in controversy between the parties.

On the other hand, it is contended by appellee that the resolution of the board of directors declaring the dividend and fixing the time of payment and the class of persons to whom payable, when free from fraud and ambiguity, determines the ownership of such dividend at the time of payment, and that by reason of the fact that the resolution declaring the dividend makes it payable to stockholders of record at a later date than the date of the resolutions, the right to receive the dividend passes by transfer of the stock before the date fixed by the resolution on which the dividend became payable and thereby becomes the property of the transferee. It is also urged by appellee that the trial court was correct in its rulings in excluding evidence contradicting the record of the board of directors as to the passage of the resolution and that if there were errors in the official records of the company they should be corrected by appropriate proceedings instituted for that purpose.

The evidence shows that the plaintiff was formerly the owner of 4059.4 shares of the capital stock of the defendant corporation of the par value of $100 each and that prior to May 14, 1917, he was one of the directors and the vice president of the corporation and thoroughly familiar with its business affairs and that he attended all meetings of the stockholders and of the board of directors and took part in negotiations and transactions relating to the business of the company from the year 1910 until the annual meeting of the stockholders held on February 20, 1917. At this date his relations with the company do not seem to have been harmonious and shortly thereafter negotiations were entered upon between the plaintiff and the corporation which culminated in an agreement dated May 14, 1917, which, by its terms, took effect as of April 1, 1917, whereby the plaintiff sold all of his stock to the corporation at the agreed price of $103 per share, a total consideration of $418,839.20, payable as set forth in the contract, in property, accounts receivable and cash. It appears that at the time of the consummation of this contract the plaintiff had been paid the dividends declared under the resolution above stated for the months of January, February and March, and that he had overdrawn his dividend account to the amount of $962.87, with which overdraft he was charged as an item of the consideration paid for the purchase of his stock. It is also shown by the evidence that at the time of the consummation of this agreement, and in connection therewith, the plaintiff executed a written instrument which recited his previous connection with the company as a stockholder and officer, ratified, confirmed and approved everything which had been done by the company during his connection with it and contained the following express ratification of the proceedings of stockholders and directors, to wit: "I ratify, approve and confirm the minutes of the meetings of the stockholders and

the minutes of the meetings of the board of directors as they are recorded in the records of said company.'' We are of the opinion that by reason of this express ratification of the official records of the company the plaintiff is now precluded from questioning the accuracy of the record of the meeting of February 20, 1917, with a reference to the resolution declaring the dividend in question. A corporation can speak only through its records and the record of its acts must be kept faithfully in order to protect the rights of stockholders and persons doing business with the corporation. Public policy requires that the records shall be kept in such a manner, and persons desiring to impeach the accuracy of the records must do so in a direct proceeding to correct the record rather than by parol evidence in a collateral action, especially upon such a subject as the declaration of a dividend. Any other rule would be likely to lead to injustice and to deprive the stockholders of the protection to which they are entitled. *Dennis v. Joslin Mfg. Co.*, 19 R. I. 666; 4 Fletcher's Cyclopedia of Corporations 4051.

From the foregoing statement it will be apparent that the only question to be determined in this case is whether the dividends for the last nine months of the year 1917 should be paid to the plaintiff, who was the owner of the stock when the dividend was declared, or to the defendant by virtue of its purchase of the stock of the plaintiff on April 1, 1917. In other words, do the dividends belong to the owner of the stock at the date of the declaration of the dividend, or should they be paid to his transferee, which in this case was the defendant corporation? It is admitted by both parties that the dividend in question was payable out of the surplus funds or accumulated profits of the corporation and not out of the earnings of any particular year.

Until a dividend has been declared the stockholders have no legal right to any share in the profits of the

company, but when the directors have taken action and declared a dividend, each stockholder has the right to share in the dividend in proportion to his stock, and the relation between the stockholder and the corporation becomes that of a debtor and creditor. The act of declaring a dividend is an admission on the part of the corporation of an indebtedness to each stockholder. 10 Cyc. 566; *Pease v. Chicago Crayon Co.,* 170 Ill. App. 234. A dividend when it has once been declared becomes the separate property of the shareholder, wholly disconnected from his shares. It does not pass with the subsequent transfer of the shares unless the contract of transfer expressly so provides, regardless of the date at which the dividend is made payable. 10 Cyc. 557; *Hopper v. Sage,* 112 N. Y. 530. The rule seems to be well established that when shares of stock are transferred without agreement to the contrary, the transferee will be entitled to all dividends declared after the transfer, the right being incidental to his ownership of the stock and requiring no separate assignment of the dividend, even if the profits out of which the dividend is declared may have been earned prior to the transfer, but that the original owner of the stock is entitled as against the transferee to all dividends which have been declared prior to the transfer, although they may not be payable until afterwards. 6 Fletcher's Cyclopedia of Corporations 3700. This rule is abundantly sustained by the authorities cited in the text to which reference is above made. We have carefully read and considered all of the cases cited by the parties to this suit, and with one exception, to which reference will be made, none of these cases is based upon a state of facts similar or analogous to those involved in the case at bar. All of these cases are decided in conformity with the general rule above stated or the decision has been governed by the particular circumstances

involved in each case, and therefore they do not furnish in any instance a binding precedent controlling the decision in the present case. The authorities, with some exceptions which will be noted, hold that dividends belong to the owners of stock on the date of the declaration of the dividend and that the transfer of the stock at any time after such declaration in the absence of any agreement to the contrary does not carry with it the dividends, but that such dividends remain an indebtedness due to the original owner of the stock, without regard to the time at which the dividends are payable. *Hill v. Newichawanick Co.*, 8 Hun (N. Y.) 459; *In re Kernochan*, 104 N. Y. 618; *Spear v. Hart*, 26 N. Y. Super. Ct. 420; *Wallin v. Johnson City Lumber & Mfg. Co.*, 136 Tenn. 124.

On the other hand, the rule is laid down in Cook on Corporations 539, in substance, that a dividend payable on a future date belongs to the stockholder owning the shares on the date of the declaration of the dividend, and not to the owner at the time it is payable, "unless, of course, the resolution declaring the dividend makes it payable to stockholders of record of a later date." This statement of the law is based upon the case of *Rose v. Barclay*, 191 Pa. St. 594. An examination of this case discloses that the stock in question was sold under a contract in writing which provided for the sale of the shares "including all dividends due or to become due thereon," and it was held that this sale carried with it a stock dividend which had been previously declared and made payable in the future. The words quoted are sufficient to distinguish the case from the case at bar. A similar rule has also been sustained in one jurisdiction where the contract of sale was without any express agreement as to future dividends, holding specifically that a sale of shares carries with it the dividends declared by the company when they are to be paid on a date subsequent to the transfer of the stock. *Burroughs v. North*

*Carolina R. Co.,* 67 N. C. 376; *Lancaster Trust Co. v. Mason,* 151 N. C. 264. It may therefore be stated fairly that there is a conflict of authority upon the question as to whether dividends payable in the future are due to the original owner of the stock at the time of the declaration of the dividend or to his transferee under a sale made after the declaration of the dividend and prior to the date of its payment. The remaining authority which should be considered is cited by both of the parties to this appeal in support of their respective contentions. We refer to the case of *Bowers v. Post,* 209 Fed. 660, affirmed in 220 Fed. 1006. In affirming the judgment the Circuit Court of Appeals stated briefly that the decision of the district court fully and accurately states the issues of fact and law presented and that the grounds of decision reported in 209 Fed. 660, are impregnable and the judgment is accordingly affirmed. Referring, therefore, to the original decision of the district court, we find that the facts involved were in many respects similar to those involved in the case at bar. The corporation of Lyon & Healy having a large surplus voted an increase of $250,000 to its capital stock and declared a stock dividend, distributing $125,000 of the new stock to the stockholders and holding the remaining $125,000 of new stock to be sold for cash to the employees of the corporation. The resolution which covered this transaction, so far as the same relates to the proceeds of the new stock to be sold to employees, provided as follows:

"That all proceeds of such stock so sold shall belong to and be distributed to the holders of the present or original capital stock, and our board of directors shall so arrange that when any part of such stock shall be sold and collected for, the proceeds shall be at once distributed to the holders of the said original stock in proportion to their respective holdings at the time of such distribution."

This language was held by the trial court to be ambiguous and therefore an application of the general rule, which has been heretofore stated, was deemed proper and the court held that the proceeds of the sale of the new stock should be paid to the holders of the original stock as they existed at the time of the declaration of the dividend. It must be admitted that while the language of the resolution is not as explicit as might have been, yet the intent of the directors in adopting the same was clear. It was undoubtedly their intention that the holders of stock at the time of the declaration of the dividend should receive the benefit of the dividend, whether the same should be in the form of new stock or in money derived from the sale to employees of a portion of the new stock.

We do not find that any such ambiguity exists in the resolution adopted by the directors of the defendant corporation. It seems to have been clearly the intent of the directors of the corporation to make the dividend payable to the owners of the stock at the time of payment of the dividend, and by so doing they gave notice that any stockholder who might wish to retain his interest in the dividends should reserve the dividends in case of any transfer of his stock during the year 1917 before the last instalment of the dividend became payable. The plaintiff has testified and admitted in writing that he was familiar with all of the transactions of the board of directors and ratified and approved the same. Further, in his settlement made with the company under the contract of May 14, 1917, he was charged with the sum of $962.87, which had been overdrawn by him and was charged to his dividend account for dividends accruing after April 1, 1917. This feature of the accounting amounts practically to an admission on the part of plaintiff that he was not entitled to any dividends after April 1, 1917. It will also be noted that the purchase price paid by defendant to plaintiff for his stock under the contract

of May 14, 1917, was $103 per share. There is nothing to indicate the actual value of the stock so sold, and the record does not contain any evidence indicating that the stock had any value in excess of its par value, although its accounts on their face show a large surplus. The fixing of the price of the stock at $103 per share tends to indicate that the dividend in question amounting to $3 per share, payable monthly during the year 1917, was taken into account in fixing the value paid the plaintiff for his stock and in adjusting the somewhat complicated accounts between plaintiff and defendant and the detailed settlement between the parties involved in the transaction. It is urged, however, that in the case of *Bowers v. Post,* 209 Fed. 660, the court indicated a doubt as to whether or not the directors of a corporation have the legal right to declare a dividend out of present earnings and provide for its payment not to the present shareholders but to some subsequent transferees, and it is therefore argued that the board of directors of the defendant corporation did not have the right or power to pass a resolution under the terms of which the dividend might become payable to parties other than the stockholders of record at the time of the declaration of the dividend. We do not think that this conclusion necessarily follows from the doubt expressed by the trial court in *Bowers v. Post, supra,* and we believe that by the passage of the resolution involved in the case at bar the directors considered the possibility that such a contingency would arise as that which was settled by the agreement of May 14, 1917. We also believe that good faith on the part of the plaintiff in the case at bar should preclude him from raising any question as to the power or right of the board of directors in this particular by reason of his own acts, conduct and admissions, acquiescing in, ratifying and confirming their proceedings,

Viewing the transaction between the parties as an entirety, we are led to believe that the negotiations which culminated in the contract of May 14, 1917, constituted a complete settlement of all matters in controversy fairly within the scope of that agreement. It is urged by appellant that such a conclusion is unwarranted by reason of the fact that the question of the ownership of the dividends was not the subject of any of the provisions of the contract and that the intention of the parties can be derived from the agreement only. Appellant cites in support of this contention the case of *Todd v. Mitchell*, 168 Ill. 199, which holds, in substance, that a general release of all claims and demands will not include a breach of a covenant of warranty of which one of the parties was then ignorant, and the case of *Bassett v. Lawrence*, 193 Ill. 494, in which an agreement canceling a prior contract and adjusting matters growing out of the same was under consideration, and the court held that a general release did not include a promissory note for money loaned where the loan did not grow out of the canceled contract and was not mentioned in the release. We do not think that these authorities are applicable to the case at bar. It cannot be said that the plaintiff here was ignorant of the matter of the unpaid dividends or that the dividend in question did not grow out of the subject-matter of the contract, which was the plaintiff's stock. In fact, the contrary seems to be indicated because the contract price of the stock was fixed at a sum which evidently included the entire dividend and also provided for the repayment by plaintiff of the sum of $962.87 which had been overdrawn by him on his dividend account, thereby confirming the construction and effect of said resolution for which appellee contends.

Another consideration which undoubtedly influenced the decision of the trial court is based upon the fact

that no demand was made by the plaintiff before instituting suit, as it is the general rule that a shareholder must prove a demand before he can maintain an action for a dividend.  10 Cyc. 567, citing *Scott v. Central R. & B. Co. of Georgia*, 52 Barb. (N. Y.) 45. While the necessity for a demand in the case at bar is not so apparent as in cases where two different individuals are claiming the dividend, yet the rule is a general one and should have been observed by plaintiff.  *Ralston v. Bank of California*, 112 Cal. 208; *Hagar v. Union Nat. Bank*, 63 Me. 509.

We are of the opinion that the facts and circumstances shown in this case are of such a character as to justify an exception to the general rule that dividends belong to the owners of the stock at the time of the declaration of the dividend.  It was the intention of the directors of the company in this case to make the dividends payable to the owners of the stock at the time the same became due under the terms of the resolution declaring the dividend.  The language of the resolution is clear and unambiguous and all parties including plaintiff concurred in this construction of its terms.

The judgment of the municipal court is therefore affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.