E. W. MEYERS, JR. v. SOUTHERN NATIONAL BANK OF NORTH CAROLINA, ADMINISTRATOR C.T.A. OF G. F. LANDGRAF, DECEASED

No. 7411SC29

(Filed 3 April 1974)

**Corporations § 18— stock purchase agreement — cost per share**

In an action for a declaratory judgment to determine the rights of the parties under a stock purchase agreement, the trial court properly concluded that the parties intended that the surviving shareholder be given the option to purchase deceased shareholder's stock at a price of so much per · share regardless of the original holdings of the parties.

APPEAL by plaintiff from judgment entered in LEE Superior Court by *Canaday, Resident Judge* of the Eleventh District, on 28 June 1973.

Plaintiff instituted this action for a declaratory judgment under the provisions of the Uniform Declaratory Judgment Act, seeking a determination of the rights of the parties under a stock purchase agreement. The controversy was submitted on an agreed statement of facts summarized in pertinent part as follows:

Plaintiff and defendant's testate (Landgraf) were officers, directors and substantial shareholders of Trion, Inc. On 11 January 1957, plaintiff, Landgraf and the corporation entered into a written agreement whereby the survivor of plaintiff and Landgraf acquired the right to purchase the stock of the other within sixty days after his death, at a price to be fixed semi-annually by the joint determination of plaintiff, Landgraf and the board of directors of Trion, Inc. The agreement provided for a secondary option in favor of the corporation to purchase the stock of the deceased shareholder if the prior right of purchase was not exercised by the surviving shareholder, and an obligation to purchase such stock to the extent it was funded by life insurance owned by the corporation. The purchase price of the stock was initially fixed at $5.00 per share and modified from time to time thereafter in accordance with the provisions of the agreement. On 30 November 1959 the purchase price of the stock for purposes of the agreement was fixed at $6.50 per share and the agreement was amended to provide that such price should remain in effect until changed by a joint determination, preferably, but not necessarily, every six months. Thereafter, the

price of $6.50 per share was not changed by the parties to the agreement.

On 23 January 1967, Landgraf, by a written statement, waived all rights to purchase under the 1957 agreement. On 11 August 1967, by written statement signed by plaintiff and Landgraf, plaintiff waived all rights under the 1957 agreement except his option to purchase the stock of Landgraf. Between 1963 and 1967, Trion, Inc., declared two 3% common stock dividends and in 1968, declared a 100% stock dividend.

Following the death of Landgraf on 7 December 1971, plaintiff gave defendant notice of his desire to exercise his option to purchase Landgraf's stock. It was determined that Landgraf owned 13,366 shares at the time of his death and defendant contends plaintiff must pay $6.50 per share (aggregate of $86,879) in order to acquire the stock. Plaintiff tendered payment in the sum of $39,413.51 which was based on $6.50 per share as agreed upon on 30 November 1959, adjusted for the dilution occasioned by the three stock dividends paid to Landgraf subsequent to that date.

The court ruled that plaintiff had properly exercised his option to purchase all stock of Landgraf in Trion, Inc., but was obligated to defendant for the purchase price at the rate of $6.50 per share without dilution and with interest thereon commencing ten days from entry of judgment. Plaintiff appealed.

*McDermott & Parks, by George M. McDermott, for plaintiff appellant.*

*Pittman, Staton & Betts, by J. C. Pittman and R. Michael Jones, for defendant appellee.*

BRITT, Judge.

Plaintiff contends that the option in question dealt with the quantum of stock existing at the time of the execution of the agreement and that, therefore, a subsequent change in the number of shares constituting that quantum requires an appropriate adjustment of the agreed price per share. In support of this contention plaintiff cites *Trust Co. v. Mason,* 151 N.C. 264, 65 S.E. 1015 (1909), *on reh.* 152 N.C. 660, 68 S.E. 235 (1910).

In *Trust Co.* the seller contracted on 23 December to sell four shares of common stock at $650 per share "allowing

the January dividend to [the seller]." Unknown to either party to the contract, the corporation had on 16 December declared cash dividends and a stock dividend, in addition to a regular semi-annual cash dividend, payable to shareholders of record on 2 January of the following year. The Supreme Court held on rehearing that a construction of the quoted phrase reserved in the seller the cash dividends but not the stock dividends. The court drew a distinction between cash and stock dividends, and, quoting *Gibbons v. Mahon,* 136 U.S. 549, 10 S.Ct. 1057, 34 L.Ed. 525 (1890), adopted the principle that a cash dividend is deemed income of each share but that a dividend in stock is deemed to be capital.

We feel that the facts in the instant case distinguish it from *Trust Co.* In this case the original agreement of 11 January 1957 provides: "WHEREAS, the Shareholders own the number of shares of Common Stock of Trion set opposite their names below, which shares together with all shares of Common Stock of Trion received as a stock dividend thereon or in exchange therefor and all shares of Common Stock of Trion hereafter acquired by the Shareholders are hereinafter referred to as the Stock."

Further, the parties agreed in paragraph number 1 of this same agreement that "[u]pon the death of a Shareholder the surviving Shareholder shall have an option to purchase the Stock of the deceased Shareholder during a period of 60 days after the date of death at the applicable price as set forth in paragraph 3 below." Paragraph 3 provided:

"The price of the Stock shall be determined jointly by the Shareholders and the Board of Directors of Trion semi-annually at the meeting of said Board next following September 1 and April 1 of each year. Such price shall be based primarily upon the then current market value but consideration shall also be given to other factors normally considered in determining a fair value such as book value, earnings, prospects, and the like. The price shall be recorded in the minutes of the meeting at which it is determined and such price shall apply to any purchase hereunder until the next semi-annual price is determined."

In every instance in which the price of the stock was set in accordance with the agreement, we find that the stock was priced at so much per share as opposed to a block price. The

best evidence of the intention of the parties to a contract is the practical interpretation given to their contract by the parties while engaged in their performance. *Peaseley v. Coke Co.,* 282 N.C. 585, 194 S.E. 2d 133 (1973) ; *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965) ; *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590 (1962).

A clear reading of the agreement, and an interpretation thereof with the conduct of the parties *ante litem motam* in mind, leads us to the conclusion that the parties intended a purchase of Landgraf's stock at a price of so much per share regardless of the original holdings of the parties.

The judgment appealed from is

Affirmed.

Judges PARKER and VAUGHN concur.