## UNITED STATES v. SOUTHWESTERN R. CO.

### No. 8235.

Circuit Court of Appeals, Fifth Circuit.

Nov. 8, 1937.

Carlton Fox, Sp. Asst. to Atty. Gen., T. Hoyt Davis, U. S. Atty., of Macon, Ga.,

and A. Edward Smith, Asst. U. S. Atty., of Columbus, Ga.

Wallace Miller and Jas. A. Lowrey, Jr., both of Macon, Ga., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for the recovery of a 5 per cent. excise tax assessed and collected from plaintiff under section 213(a)[1] of the National Industrial Recovery Act (48 Stat. 206) on its dividend paid by appellee July 1, 1933. The claim was that the dividend was tax exempt under the act, because, though paid after June 16, 1933, when the act took effect, it had been declared before that date. The defense was that the resolution of the board of directors on February 12, 1931,[2] relied on as a declaration of dividend prior to the taking effect of the act, was not, when passed, and did not, before the dividend was paid, become a valid declaration.

The points made against the resolution as a valid dividend declaration before the effective date of the act, were: (a) That it undertook to declare dividends out of profits not then earned, but merely anticipated; (b) it was rescinded automatically by its own express terms, in January, 1933, when there was a failure to pay the semiannual rental due January 1, 1933; (c) it never created the relationship of debtor and creditor between appellee corporation and the stockholders; (d) because if it ever took effect, it did not do so until the past due rental was received on June 29, 1933, 13 days after the effective date of the taxing statute.

The cause was submitted to the District Judge upon documents, evidence, and a stipulation raising no disputed questions of fact, but only one of law. These are the facts.

In June, 1869, appellee leased all of its property to the Central Railroad & Banking Company of Georgia for appellee's entire corporate existence. By the terms of the lease, the rental due the lessor was to be paid in semiannual installments in June and December of each year, in the form of a dividend declared by the lessee and paid directly to the stockholders of the lessor. This lease continued in effect until 1892, when the lessee went into receivership, and the Central of Georgia Railway Company became its successor. In October, 1895, appellee leased all of its properties to the new corporation for a period of 101 years, renewable forever. Under the terms of this lease appellee was to receive from its lessor as rental for the use of its properties the sum of $259,555 per annum, in semiannual payments on January and July 1 of each year, the lease to be forfeitable for nonpayment of any installment of rent due, upon conditions recited in it at the election of the appellee. The semiannual payments were made to appellee over a long period of years, and from the rentals thus received appellee paid dividends on the first days of January and July in each year to its stockholders of record on the first day of the month immediately preceding the date of each semiannual payment. No resolution authorizing the payment of dividends was adopted by appellee until February 12, 1931, when the resolution set out in note 2 supra was adopted. The purpose of adopting the resolution was to avoid the

[1] Section 213(a). "There is hereby imposed upon the receipt of dividends (required to be included in the gross income of the recipient under the provisions of the Revenue Act of 1932) by any person other than a domestic corporation, an excise tax equal to 5 per centum of the amount thereof, such tax to be deducted and withheld from such dividends by the payor corporation. The tax imposed by this section shall not apply to dividends declared before the date of the enactment of this Act."

[2] "Be it resolved by the board of directors of the Southwestern Railroad Company, that a dividend of five per cent (5%) per annum, or Five Dollars ($5.00) per share, on the outstanding capital stock of the Southwestern Railroad Company amounting to $5,191,100, be, and the same is, hereby declared payable semiannually on the first of January and July in each year to stockholders of record at the close of business on the first day of the month immediately preceding the date of said semi-annual payments. Said dividends shall be payable out of the rentals received from the Central of Georgia Railway Company under the terms of the lease contract between this corporation and the said Central of Georgia Railway Company dated October 17, 1895.

"Be it further resolved that this resolution shall remain in effect so long as the Central of Georgia Railway Company complies with the terms of said lease contract in reference to the payment of said annual rental.

"Be it further resolved that the payments of all dividends to the stockholders

necessity and expense of two meetings of the directors each year. No other resolution was adopted at any time with reference to the declaration or payment of dividends. Thereaftcr dividends were paid on July 1, 1931, to the stockholders of record June 1, 1931, on January 1, 1932, to stockholders of record December 1, 1931, on July 1, 1932, to stockholders of record June 1, 1932. No dividend was paid on January 1, 1933, because the rental due then for the period beginning July 1, 1932, and ending December 31, 1932, was not received until June 29, 1933. On July 1, 1933, the dividend in the sum of $129,777.50 which was to have been paid January 1, 1933, was paid to the stockholders of record December 1, 1932, out of the rental payment which was due to have been paid on or before January 1, 1933. Appellee had no outstanding bonds or preferred stock, or any creditors. Its liabilities consisted of its stock, its surplus, and a special cash fund reserved for the payment of unclaimed dividends. The market value of the stocks and bonds representing its surplus was, on December 31, 1930, $251,490.-60; on December 31, 1931, $209,520.80; on December 31, 1932, $180,617.20; on July 1, 1933, $179,290. Its outstanding capital stock at all times was $5,191,100.

Plaintiff's board of directors intended that the dividend resolution in December, 1931, should have the effect of declaring a semiannual dividend of 2½ per cent. per share to stockholders of record on December 1, and June 1, of each year.

The District Judge thought plaintiff had made out its case, and should have judgment. This appeal is from that judgment.

Here appellant, invoking Treasury Decision 4372,[3] in further support of its general claims as to the ineffectiveness of the resolution to take the dividend out of the taxing act, insists that, since it dealt with rentals to be received in the future, it was a mere attempt to bind the corporation to pay future dividends not out of funds on hand available for dividends, but out of anticipated, and therefore unavailable, earnings and profits.

Appellee, on its part, insists that appellant, in so contending, has entirely misconceived the effect of the undisputed evidence. It points out that here was no attempt to bind the general credit of the corporation for the payment of future dividends which it hoped its anticipated earnings or profits would justify. Indeed, there was no attempt here to bind the general credit of the corporation at all. Here was merely an appropriation to its stockholders, available to them when received in hand, of rents, the amounts of which were fixed by an agreement of long standing, and the payment of which a long and uninterrupted course had made practically certain. The effect of the resolution, in short, as to the particular dividend in question, was to appropriate and set apart to the stockholders of record on December 1, 1932, in complete satisfaction of the dividend, the rentals payable under the contract terms for the period ending December 31, 1932. The fact that the rental so appropriated was not paid when due does not at all affect the fact that it had been specifically appropriated by the resolution, and that when it was received by the company, within the 6 months fixed in the lease for compliance by lessee, it was received under the terms of the resolution as payable, and it was by force of it paid by the company to the stockholders, to whom it belonged, those of record December 1, 1932. Thus it argues, the resolution operated as a continuing appropriation or assignment of the rentals to the stockholders designated, as effective to bind the rentals when received, as though they were already in hand when the resolution was passed.

In further answer to appellant's claim that the declaration was invalid as an attempt to pay dividends when there were no surplus funds available and their payment would have impaired appellee's capital position, appellee points to the fact that on each of the dates when, by the terms of the res-

of this corporation since January 1, 1896, be, and the same are, hereby ratified and approved."

3 "Section 213 imposes an excise tax upon the receipt of dividends, except those which were validly declared before the date of the enactment of the Act. A declaration of dividends payable periodically in the future will be regarded as void for the purposes of Section 213 unless the declaring corporation at the time had sufficient earnings and profits accumulated subsequent to February 28, 1913, to enable it to pay all such future dividends so declared. No attempt to bind a corporation to pay future dividends out of anticipated earnings and profits will be recognized as a valid declaration for the purposes of that section."

olution, the dividends were payable, there was a surplus on hand in excess of the dividends. It answers appellant's claim that the resolution was automatically rescinded under its terms by the failure to pay the semiannual rental due January 1, 1933, by pointing to the 6 months' leeway the lease gave within which to pay before default, and the fact that within that time it was paid.

It answers the claim, that the resolution, if it ever took effect, did so only when the payment was actually received on June 29, 1933, 13 days after the effective date of the taxing statute, by pointing out that under all the authorities the resolution took effect as of December 1, 1932, as a charge against the rental due for that period, and it remained effective as an appropriation of the rental until the rental was paid.

Further answering that contention, it points to the statement of the president at the annual meeting of the stockholders in 1933, that the only reason the dividend had not been paid was that the rental installment had not been received, to the fact that the treasurer of the company, without further declaration or direction, paid the rental over as soon as it was received, to the stockholders of record December 1, 1932, and to the positive testimony that the payment was made pursuant to the resolution of February 12, 1931. Thus, though it is quite true that the stockholders of record December 1, 1932, could not have sued the company as obligated to them for the payment of the dividend before the rentals were received, as soon as they were received they had the undoubted right, under the resolution setting these rentals apart to them, to hold the company strictly to their payment.

Thus, too, whatever might be said as to the effectiveness of the resolution as a valid declaration of dividends before the rentals became earned, it may not be denied that when earned the resolution took effect upon them as a valid declaration unaffected by the fact that there was delay in their payment.

We think appellee has the right of the argument, and that the judgment should be affirmed. Here is no case of dividends declared and to be paid out of supposititious future earnings, and anticipated unearned profits. Here is a case of dividends to be paid out of definite and specific rents on a public railroad property, which, fixed by agreement and certain to become due, the directors by resolution had set apart and appropriated to stockholders particularly designated in the resolution. Here is a case of dividends paid out of moneys earned before the effective date of the taxing act under authority of a resolution declaring them before the effective date of the act. The company had no creditors, no obligations, and at all times material here it had a surplus. Under no possible theory could the resolution be regarded as in violation of the statutes or the public policy of Georgia. On no possible theory could its effectiveness as a declaration of dividend out of the rents when earned, be successfully challenged. In no sense an attempt to bind appellee to pay future dividends out of unearned and unanticipated profits, and as applied here to rents already earned before the act took effect, not a declaration of dividends payable periodically in future, it is unnecessary for us to consider or determine whether the invoked treasury decision is an unwarranted limitation upon, or a correct construction of, the taxing act. No case has been cited to us which at all supports appellant's view, that the declaration was not the prior declaration the taxing act provides for. Such judicial construction of the act as there has been supports the validity of the declaration. Evening Star Newspaper Co. v. United States (Ct.Cl.) 16 F.Supp. 1020; Crocker v. Carney (D.C.) 17 F.Supp. 534; Southwestern Portland Cement Co. v. United States.[4]

The judgment was right. It is affirmed.

---

[4] No opinion for publication.