### ALEXANDER & ALEXANDER, Inc., v. UNITED STATES.

No. 6045.

District Court, D. Maryland.

March 5, 1938.

J. Craig McLanahan and France, McLanahan & Rouzer, all of Baltimore, Md., for plaintiff.

James P. Garland, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for the United States.

WILLIAM C. COLEMAN, District Judge.

This is an action at law, brought by the plaintiff corporation to recover excise taxes in the amount of $2,023.88, including interest, claimed to have been illegally assessed and collected under section 213 (a) of the National Industrial Recovery Act of 1933, 48 Stat. 195, 206, upon dividends paid by the plaintiff company to its stockholders during the months of June, 1933, to December, 1933, inclusive. In due

course, after payment of the tax under protest, the plaintiff filed a claim for refund, which was disallowed, whereupon this suit was brought.

From the facts which have been stipulated, it appears that on January 26, 1924, the board of directors of the plaintiff company adopted a resolution declaring a dividend of $1.50, payable on the thirty-first day of that and each succeeding month, to stockholders of record on the twenty-sixth day of the month; the resolution further providing that: "This rate of dividend payment shall continue until such time as the Board of Directors shall otherwise order." On September 17, 1924, this resolution was changed, but only to the extent that the rate of the dividend payable in accordance with the provisions of the prior resolution was increased to $3.50. On July 28, 1931, the dividend rate was decreased to $2.50, but again no further change was made in the original resolution. Pursuant to the aforegoing, plaintiff company paid dividends monthly from August, 1931, through December, 1933, during all of which time the plaintiff company had ample surplus from which to pay these dividends.

Section 213(a) of the National Industrial Recovery Act, which was enacted June 16, 1933, is as follows: "There is hereby imposed upon the receipt of dividends (required to be included in the gross income of the recipient under the provisions of the Revenue Act of 1932) by any person other than a domestic corporation, an 'excise tax equal to 5 per centum of the amount thereof, such tax to be deducted and withheld from such dividends by the payor corporation. The tax imposed by this section shall not apply to dividends declared before the date of the enactment of this Act."

It is the contention of the plaintiff company that the resolution of July 28, 1931, of its board of directors, considered in conjunction with the prior resolutions of like tenor, except for change in the rate of dividend, constituted a declaration of dividends that are exempt from taxation under the statute above quoted, because they fall within the exemption clause therein contained, namely, that, "The tax imposed by this section shall not apply to dividends declared before the date of the enactment of this Act," since, as the plaintiff company contends, the resolution of July 28, 1931, constituted a declaration of

dividends on that date within the meaning of the statutory proviso just quoted, and therefore was exempt because it was prior to June 16, 1933, the date of the enactment of the law. The correctness of this contention is the sole point in issue. It is the contention of the government that the resolution of July 28, 1931, did not create between the plaintiff company and its shareholders a debtor and creditor relationship for the payment of the dividends in question, nor was such a relationship established by the prior resolutions of the plaintiff company's board of directors, and that unless and until a debtor-creditor relationship is established there has been no declaration of dividend within the meaning of the statute. In other words, the government maintains that the clause contained in all of the resolutions to the effect that, "This rate of dividend payment shall continue until such time as the Board of Directors shall otherwise order," nullified any idea of a debtor-creditor relationship, and placed entire discretion in the company's board of directors, not only to change the rate of dividend at any time prior to payment, but to withhold payment entirely should they see fit to do so. That is to say, the government asserts that in order for a dividend to be fully "declared" within the meaning of the statute, the action taken with respect thereto must be such as to create a legal and enforceable debt, which is definite, final, and irrevocable, and which effects an appropriation of surplus of the company to the payment of the debt thereby created. This is in conformity with the administrative interpretation placed by the collector of internal revenue upon the expression, "dividends declared," as used in the statute. See I. T. 2744, XII-2, Cumulative Bulletin, 403.

We find no fault with this interpretation. When a debtor-creditor relationship is in fact created, the situation is not altered by reason of the fact that payment is expressly deferred until a future time; that is to say, to stockholders of record at a later date. See Wheeler v. Northwestern Sleigh Company, C.C., 39 F. 347; United States v. Guinzburg, 2 Cir., 278 F. 363; Plant v. Walsh, D.C., 280 F. 723; Park v. Gilligan, D.C., 293 F. 129; Bulger Block Coal Co. v. United States, Ct. Cl., 48 F.2d 675; Fletcher on Corporations, Perm.Ed., § 5322. A board of directors, having once declared the dividend and such declaration having been made public, nei-

ther it nor its successors can thereafter rescind or revoke such declaration,—(see Carney v. Crocker, 1 Cir., 94 F.2d 914, decided February 15, 1938; Staats v. Biograph Company, 2 Cir., 236 F. 454, L.R.A. 1917B, 728; Ford v. East Hampton Rubber Thread Company, 158 Mass. 84, 32 N. E. 1036, 20 L.R.A. 65, 35 Am.St.Rep. 462), although title to the dividend does not actually vest in the stockholders until the date fixed by the directors for determining what stockholders shall be the payees. See Richter & Co. v. Light, 97 Conn. 364, 116 A. 600; United States v. Southwestern Railway Company, 5 Cir., 92 F.2d 897. Also, we find that the collector is correct in an additional ruling to the effect that the date as of which dividends under the statute are to be considered as having been "declared," is the date when the resolution declaring the dividends is passed. See I. T. 2786; 13 C.B. I, page 446. A previous ruling had fixed the date of declaration to be the date of record, as specified in the dividend resolution, and not the date of the resolution itself. See I.T. 2766; 13 C.B. I, page 443. See, also, memorandum of General Counsel to the Bureau of Internal Revenue, 13174, 13 C.B. I, page 444.

From the very wording of the resolutions in the present case, we conclude that the declaration of the dividends was not final and irrevocable, and that therefore the contention of the plaintiff company for exemption cannot be sustained. The reservation contained in each successive resolution is that, "This rate of dividend payment shall continue until such time as the Board of Directors shall otherwise order." Pursuant to this reservation, the directors did in fact both increase and decrease the rate, and they could, had they so desired, have refused to declare any dividend. Since, as we have seen, title in a dividend vests, and the appropriation of the funds representing the dividend becomes effective, as of the record date specified in the resolution, it may be assumed, but without deciding, that if, contrary to the situation here, the resolution contained no reservation empowering the board of directors to discontinue payments, they would be free to change their mind up until the record date, but not thereafter, if the declaration had not already been made public to stockholders. However, by virtue of the reservation now under consideration, the directors could, at any time, presumably even after the record date, that is to say, the twenty-sixth day of each month, have changed the rate or ordered the omission altogether of any dividend payments. We may even assume that the Directors of the plaintiff company never intended to reserve such a broad power to themselves, or that if they did, it was to be exercised only until, and not after the record date specified in the resolution, because, had their intent been otherwise, it is reasonable to assume that the directors would have employed more specific language. Nevertheless, although the resolution does indicate a general intention to continue to pay the dividends at the specific rate and at the dates mentioned therein, the company was not bound to do so. Furthermore, while, as is stipulated, the company had available ample surplus from which to pay the dividends at all times in question, from June, 1933, to December, 1933, inclusive, the directors were never prevented from discontinuing entirely future dividend payments and thereby making the surplus then on hand available for other purposes. Clearly, then, if this be true, there is lacking that finality necessary to create a binding debt from the company to the stockholder until actual payment of the dividend, without which debtor-creditor obligation the "declaration" of the dividends is not within the meaning of the statute.

There are a number of reported cases that deal with this question. It is not necessary to review them all. The facts in some, as reported, are so meagre as to make it difficult to determine whether those cases are or are not in accord with the view here adopted. In United States v. Murine Company, 90 F.2d 549, a recent decision of the Circuit Court of Appeals of the Seventh Circuit, in which certiorari was denied by the Supreme Court, 302 U.S. 734, 58 S.Ct. 119, 82 L.Ed. ——, it was held that a resolution of a corporation which authorized its treasurer to pay monthly dividends to stockholders, and which further provided that, "He may omit the same or defer the payment until some later date," did not constitute a valid declaration of dividends, and hence dividend payments made, as a result of this resolution, after the enactment of the same statute here in question, were subject to the tax. The court said, at page 551, of 90 F.2d: "It is the contention of appellant that under this language the resolution was not definite, final, and irrevocable so as to create the

relation of debtor and creditor between the corporation and its stockholders, while appellee contends to the contrary and that the language quoted should be construed merely as a qualification as to the time of payment and not a limitation upon the obligation of the company to pay dividends. A number of authorities are cited by appellee in support of this contention, which authorities were cited and relied upon by the court below. * * * An examination of these authorities, however, convinces us that they afford very little support, if any, to appellee's contention. They all in varying degree hold that language used, which merely extends the time of payment, is not a limitation upon the obligation of the corporation to pay dividends. In other words, a declaration to pay dividends is not invalid on account of language used which merely extends or makes uncertain the time of payment. In the instant case, if the resolution had merely authorized the treasurer to defer the payments until some later date, the cases cited would be applicable and controlling, but to give the resolution such construction it seems to us is to ignore entirely the words, 'he may omit the same.'"

In Crocker v. Carney, a decision of the District Court of the District of Massachusetts, 17 F.Supp. 534, the language of the resolution in question was: "That a distribution of One Dollar ($1.00) per share be paid on June 29, 1933 to shareholders of record June 22, 1933, subject to the approval of the President and Treasurer and Assistant Treasurers." Informal approval was had on April 25, 1933, and orally communicated to the trustees, some of whom were also stockholders of the plaintiff company (which was a Massachusetts trust), but the officers took no formal action indicating their approval. Nevertheless, it was held that the dividends were not subject to tax under the statute here involved since the dividends had been "declared" prior to the effective date of the Act. The court said, at page 535 of 17 F.Supp.: "The resolution of March 24, 1933, in and of itself was not an outright declaration of dividend, for it was only with the approval of the officers named in the resolution that the dividend would be paid. However, when, on April 25, 1933, the proper officers approved the payment of the dividend, and communicated that fact to other trustees who were stockholders, it created a debtor and creditor relationship which vested certain rights in the stockholders. This is the relationship contemplated by the statute and regulations promulgated thereunder. Since nothing further was to be done after that, except the actual payment of the money, which was effected on the proper date, I rule that the dividend upon which the tax was imposed was a declared dividend within the meaning of section 213(a) of the National Industrial Recovery Act."

This decision was reversed on February 15, 1938, by the Circuit Court of Appeals for the First Circuit, 94 F.2d 914. The reversal, however, was not with respect to the point here under consideration, the appellate court finding that the lower court was in error in ruling that there had been the requisite approval by the officers of the company prior to the effective date of the act, and that since such approval did not take place until after that date, the relation of debtor-creditor between the company and the shareholders arose subsequent to that date, thus making the dividend not fully and unconditionally declared until after that date, and therefore subject to the tax imposed by the statute.

In Lockhart Iron & Steel Co. v. James L. O'Toole, Jr., 22 F.Supp. 919, a decision of the District Court for the Western District of Pennsylvania, rendered February 14, 1938, the first resolution in question, adopted on March 2, 1923, was as follows: "On motion, * * * a regular dividend of two (2%) per cent. quarterly, payable at the usual time, was declared, until further notice." For a number of years thereafter a dividend of 2 per centum was paid quarterly by the company, pursuant to this resolution. Then, on November 7, 1931, the company's directors adopted the following resolution: "Upon motion duly seconded, it was decided to change the dividend to one and one-half (1½%) per cent., payable quarterly, beginning with the close of the first quarter of 1932, and continuing at the regular periods until further notice."

The government contended that the words, "until further notice," in these resolutions, were not such a firm declaration as to bring the plaintiff company within the exemption of the statute because the resolutions did not irrevocably commit the company to continue payment, and because the three dividends in controversy were not actually declared until payment of them was made. The court said:

"As we view the situation, this is a correct interpretation of the statute. To constitute a valid declaration, the resolution must by its terms create a binding and enforceable obligation on the part of the corporation to pay: McLaran v. Planing Mill Co., 117 Mo.App. 40, 93 S.W. 819; United States v. Murine Co., 7 Cir., 90 F. 2d 549; Realty Investment Co. v. Moore, D.C., 22 F.Supp. 918, decided June 11, 1937.

"The resolution in the instant case is not an irrevocable declaration of a dividend, because, by the use of the words, 'until further notice,' the directors have retained the power to change the declaration. Until the actual payment, the corporation was not irrevocably committed to pay. We, therefore, conclude that the plaintiff is not entitled to recover in this case."

While the phraseology employed in the resolutions which were the subject of review in the above cases varies slightly from the phraseology of the resolutions here under consideration, such variation is not material, and we believe the reasoning and the conclusion adopted in those cases to be sound and equally applicable here.

In Southwestern Portland Cement Company v. United States, 22 F.Supp. 846, a decision of the District Court for the Southern District, Central Division, of California, on February 23, 1937, the resolution under review was also quite akin in its phraseology to those here considered. After providing for the payment of the dividend, the resolution stated that it should be paid, "at the rate herein stated, until otherwise ordered by the Board of Directors." The court reached a view contrary to our own, upon reasoning which is meagre and not convincing. To the same effect, see Alabama Pipe Company v. United States, Ct.Cl., 21 F.Supp. 173; West Bay Sugar Company v. United States, 22 F.Supp. 844, a decision of the District Court for the Eastern District, Northern Division, of Michigan, decided August 7, 1936; Evening Star Newspaper Company v. United States, Ct.Cl., 16 F.Supp. 1020. See, also, Realty Investment Company v. Moore, 22 F.Supp. 918, a decision of the District Court for the Northern District, Eastern Division, of Ohio, rendered June 11, 1937; United States v. Southwestern Railway Company, supra.

For the aforegoing reasons, judgment must be for the government.